398 A.2d 1053

**Alice F. CIPOLLA, Appellant,**

v.

**Anthony V. CIPOLLA.**

Superior Court of Pennsylvania.

Submitted Oct. 26, 1978.

Decided Feb. 28, 1979.

John W. Dineen, Neighborhood Legal Services, Aliquippa, for appellant.

John J. Ross, Aliquippa, for appellee.

Before PRICE, HESTER and WATKINS, JJ.

HESTER, Judge:

This case arises under an October 12, 1977 order of court issued pursuant to Sec. 10186 of the Protection From Abuse Act, Act of October 7, 1976, P.L. 1090, No. 218, as amended June 23, 1978, P.L. 81 (35 P.S. § 10181 et seq.). Two months following the entry of the order, appellee Anthony Cipolla was charged with indirect criminal contempt for willfully violating the aforementioned order. Following a hearing and the submission of an opinion examining all the facts adduced therein, the court found appellee had not violated its order and thus was not in contempt. Appellant Alice Cipolla pursued this appeal. Because we hold that an appeal cannot lie from an adjudication of not guilty of criminal contempt, we quash the appeal.

■ On October 6, 1977, Alice Cipolla filed with the Beaver County Court a petition under the Protection From Abuse Act [1] (hereafter, the Act) alleging that her estranged husband Anthony had at various times during the preceding

1. The Protection From Abuse Act is a vanguard measure dealing with the problems of wife and child abuse. It is designed to protect against abuse not only between family or household members who reside together, but also between unmarried persons living together. 35 P.S. § 10182. To institute an action, the plaintiff must file a petition with the court alleging abuse by the defendant. § 10184. If emergency relief is needed, the court may enter a temporary, ex parte order to protect the plaintiff or minor children from abuse. In any event, a hearing must be held within ten days at which time plaintiff must prove the charges. § 10185. The court is empowered to grant broad relief to bring about a cessation of abuse: an order directing defendant to refrain from abusing plaintiff or the children; evicting defendant from the residence and granting possession to plaintiff; awarding temporary custody of and/or establishing temporary visitation rights with regard to children; and directing defendant to pay support. Any such order entered shall have no effect beyond one year. § 10186. District Justices are authorized to grant relief during weekend hours. § 10188. Defendant may be held in indirect criminal contempt for violating the order and may be imprisoned up to six months or be fined $1,000.00 or both. An arrest for violation of the order may be made without a warrant even if the violation is not committed in the presence of the officer. § 10190. See, Note, 51 Temp.L.Q. 116 (1978).

eight months abused, kicked, and assaulted her at her home; that he had threatened her with firearms; that she had been hospitalized and forced to wear a neck brace as a result of his beatings; and that he threatened further violence should Alice pursue legal remedies against him. Alice requested immediate relief from the court in the form of an order instructing Anthony to stay away from her residence and place of employment and to refrain from all further abuse and threats. On the same day, the court, under § 10185(b) of the Act, issued an ex parte temporary order granting the requested relief and setting down a hearing date for October 12 for a full adversary hearing on the matter. On October 12, the parties appeared, represented by counsel, and signed a consent agreement wherein Anthony agreed to refrain from abusing, striking, or threatening Alice and her children. Further, the premises at which Alice was residing were granted exclusively to her for twelve months and Anthony agreed not to enter upon the lot or the residence thereon. An order of court, effectuating all provisions of the consent agreement, was entered the same day.

There followed two petitions by Alice for rules to show cause why Anthony should not be held in contempt of court for numerous violations of the October 12 consent decree. The petitions alleged Anthony had engaged in a string of violent incidents, each beginning with his breaking into his wife's residence late at night, arguing, threatening, and abusing her, and then fleeing before police could arrive. On December 12, 1977 a full hearing on the rules was held, wherein witnesses appeared for both sides. At the conclusion thereof, the court entered an order discharging the rules to show cause and refusing, on the merits, to hold Anthony Cipolla in contempt. His wife brought this appeal, requesting this Court to reverse the court below and rule that Anthony was in contempt of court as a matter of law.

Initially, it is important to note that this case is one of criminal contempt, not civil. In distinguishing between

the two, our courts have long been guided by the dominant purpose of the court:

Discovery of the court's dominant purpose requires a functional analysis of the court's action. . . . Basically, the reviewing court must decide whether the citing court's purpose was to "vindicate the dignity and authority of the court and to protect the interest of the general public." Such citation is for criminal contempt. If the citation's purpose is to coerce the contemnor into compliance with the order of the court to do or refrain from doing some act primarily for the benefit of a litigant or a private interest the citation is for civil contempt. *Woods v. Dunlop,* supra, 461 Pa. [35] at 40 n.2, 334 A.2d [619] at 622 n.2 (citations omitted).

"[I]f the contempt consists solely of a past act, the only allowable judicial response is punitive, and any contempt adjudication must be criminal. *In re Martorano,* supra, 464 Pa. [66] at 80 n.19, 346 A.2d [22] at 29 n.19."

*Commonwealth v. Charlett,* 481 Pa. 22, 391 A.2d 1296, 1298 (1978); *In re "B",* 482 Pa. 471, 394 A.2d 419 (1978); *Knaus v. Knaus,* 387 Pa. 370, 127 A.2d 669 (1956). Although the dividing line between the two types of contempt is often "shadowy or obscure", *Altemose Const. Co. v. Building and Const. Trades Council,* 449 Pa. 194, 218, 296 A.2d 504, 517 (1972), we are satisfied, and appellant concedes, that the instant proceeding was one for criminal contempt. The sole motivation was the endeavor to punish Anthony for noncompliance. Our examination of the record and opinion of the court below shows that the court was not inclined to fashion a remedial order, i. e., one wherein Anthony Cipolla could purge himself of contempt by obeying the order, thus avoiding sanctions. See, *Woods v. Dunlop,* supra, fn. 2. Such a citation would have been for civil contempt. *East Caln Twp. v. Carter,* 440 Pa. 607, 269 A.2d 703 (1970). The entire proceeding below had as its dominant purpose to decide if appellant had disobeyed the order and, if he had, then to punish him criminally so as to preserve the authority of the court and to protect the interests of the general public.

Moreover, appellee was seeking a citation for *indirect* criminal contempt, that is, occurring outside the presence of the court. *Charlett,* supra; *Commonwealth v. Harris,* 409 Pa. 163, fn. 3, 185 A.2d 586, fn. 3 (1962).[2] We now turn to a consideration of the character and nature of a criminal contempt proceeding.[3]

Criminal contempt is a crime in every fundamental respect. *Codispotti v. Pennsylvania,* 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). *In re Johnson,* 467 Pa. 552, 359 A.2d 739 (1975).

Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both. In the words of Mr. Justice Holmes:

> "These contempts are infractions of the law, visited with punishment as such. If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech." *Gompers v. United States,* 233 U.S. 604, 610, 34 S.Ct. 693, 58 L.Ed. 1115 (1914).

Criminally contemptuous conduct may violate other provisions of the criminal law; but even when this is not the case convictions for criminal contempt are indistinguishable from ordinary criminal convictions, for their impact on the individual defendant is the same. Indeed, the role of criminal contempt and that of many ordinary criminal laws seem identical—protection of the institutions of our government and enforcement of their mandates.

**2.** Our conclusion that the proceedings below were for indirect criminal contempt is buttressed by the 1978 Amendments to the Act which provide that the court may hold the defendant in indirect criminal contempt should a violation of a protection order occur.

**3.** This court has jurisdiction to hear appeals in cases involving indirect criminal contempt. 17 P.S. 211.302. *Commonwealth v. Ryan,* 459 Pa. 148, 327 A.2d 351 (1974); *In re Tumpson,* 236 Pa.Super. 568, 345 A.2d 774 (1975). However, our decision today raises a constitutional barrier to appellate jurisdiction which might otherwise vest by statute.

*Bloom,* supra, 391 U.S. at 201, 88 S.Ct. at 1481–2. In *Michaelson v. U. S. ex rel. Chicago, St. P., M. & O. R. Co.,* 266 U.S. 42, 66, 45 S.Ct. 18, 20, 69 L.Ed. 162 (1924) the court stated, "[T]he fundamental characteristics of both [crimes and criminal contempts] are the same."

Recognizing the inherent criminal nature of this type of contempt, the legislature has enshrouded the proceeding with appropriate procedural safeguards. Thus, where one is accused of indirect criminal contempt, he shall enjoy the normal rights as to admission to bail, Judicial Code, Act of July 9, 1976, P.L. 586, No. 142 and amended by Act of April 28, 1978, No. 53 (42 Pa.C.S.A. § 4135);[4] cf. *In re Marshall's Estate,* 416 Pa. 64, 204 A.2d 243 (1964); rights to be notified of the accusation and time to prepare a defense, Judicial Code, § 4135, supra; *In re Galloway,* 480 Pa. 1, 389 A.2d 55, 57 (1978) (Roberts, J. concurring); *Commonwealth v. Garrison,* 478 Pa. 356, 386 A.2d 971 (1978); and the right to a speedy and public trial by impartial jury, Judicial Code.[5] *Charlett,* supra, (declaring statutory right to trial by jury in indirect criminal contempt proceeding is also guaranteed by the Sixth Amendment to the U. S. Constitution); *Altemose,* supra, (declaring the several mandates of former 17 P.S. § 2047 are but "declaratory of the constitutional guarantees of due process of law"); *Commonwealth v. Fletcher,* 441 Pa. 28, 269 A.2d 727 (1970). Additionally, the alleged contemnor is entitled to the assistance of counsel, *Commonwealth v. Crawford,* 466 Pa. 269, 352 A.2d 52 (1976); *Commonwealth v. Abrams,* 461 Pa. 327, 336 A.2d 308 (1975) and may only be found guilty if every element of the crime is proven beyond a reasonable doubt, *In re Johnson,* supra, 467 Pa. 552, 359 A.2d 739 (1976). In short, the accused in such a proceeding "is entitled to the essential procedural safeguards that at-

---

4. Former 17 P.S. § 2047 which provided most of the foregoing procedures in indirect criminal contempt proceedings was repealed by the Judiciary Act Repealer Act, Act No. 1978–53, § 2, and replaced by § 4135 of the Judicial Code, cited above.

5. § 10190 of the Protection From Abuse Act, as amended in 1978, provides that the defendant shall not have the right to a jury trial on a charge of indirect criminal contempt.

tend criminal proceedings generally." *In re Martorano,* 464 Pa. 66, 80, 346 A.2d 22, 29 (1975).[6]

██ Recognizing as we do that these weighty rights attend all indirect criminal contempt proceedings, we do not hesitate in acknowledging that the double jeopardy clause must also attach to the contempt trial. Thus, the same reasons which forbid the Commonwealth to appeal a not guilty verdict in a criminal trial must also prohibit an appeal by the verdict loser following an adjudication of not guilty of criminal contempt.

> That " '[a] verdict of acquittal may not be reviewed without putting the defendant twice in jeopardy and thereby violating the Constitution' " has recently been described as "the most fundamental rule in the history of double jeopardy jurisprudence" . . . The judgment of acquittal, however erroneous,[7] bars further prosecution on any aspect of the [charge] and hence bars appellate review of the trial court's [rulings].

*Sanabria v. U. S.,* 437 U.S. 54, 98 S.Ct. 2170, 2178, 2184, 57 L.Ed.2d 43 (1978).

> The [Double Jeopardy] Clause therefore guarantees that the state shall not be permitted to make repeated attempts to convict the accused "thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity as well as enhancing the possibility that even though innocent he may be found guilty."

*U. S. v. Martin Linen Supply Company,* 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977) (grant of acquittal under Fed.R.Crim.P. 29(c) after jury was "hopelessly deadlocked" in criminal contempt trial, held to bar appeal). See

---

6. The alleged contemnor has no right to a preliminary hearing, however, *Marco Ind., Inc. v. U. S. W.,* 401 Pa. 299, 164 A.2d 205 (1960). See also, *Commonwealth v. Mayberry,* 459 Pa. 91, 101–6, 327 A.2d 86, 91–4 (1974).

7. Appellant instantly alleges several erroneous evidentiary rulings by the Court during the contempt proceedings. Our holding today precludes resolution of these issues.

also, *Commonwealth v. Thinnes,* 263 Pa.Super. 79, 397 A.2d 5 (1979); *Commonwealth v. Ferrone,* 218 Pa.Super. 330, 280 A.2d 415 (1971); *Commonwealth v. Katz,* 202 Pa.Super. 629, 198 A.2d 883 (1964). We therefore hold that an adjudication, on the merits, of not guilty of indirect criminal contempt is an absolute bar to appellate review.

*Commonwealth v. Guardini,* 226 Pa.Super. 435, 310 A.2d 422 (1973) is not to the contrary. We there said:

> The refusal of a lower court to enter an order holding someone in contempt may be a "final order", [and thus appealable] but only if the refusal is tantamount to denying to the party requesting the order relief to which that party has a right under an earlier final order.

Id., 226 Pa.Super. at 437, 310 A.2d at 424. In reaching that conclusion, we relied only on cases wherein appellate review was made of lower court refusals to hold parties in *civil* contempt. *State Grand Lodge of Pa. v. Morrison,* 277 Pa. 41, 120 A. 769 (1923); *Braunschweiger's Estate,* 322 Pa. 394, 185 A. 753 (1936); *Aungst Contempt Case,* 411 Pa. 595, 192 A.2d 723 (1963); *Davidyan v. Davidyan,* 333 Pa. 465, 3 A.2d 921 (1939). Our holding instantly is not at variance with those civil contempt cases.

■  Our decision is not to be construed as incorporating in toto all procedural safeguards of the plenary criminal trial into the criminal contempt trial. "[N]o need exists to fit criminal contempt, a crime sui generis, into the mold of procedures created for more commonplace offenses." *Mayberry,* supra, 459 Pa. at 102, 327 A.2d at 91; see also Cohen, J. concurring in *Marco Ind.,* supra. We are convinced, however, by the nature of the indirect criminal contempt

62

proceeding, that double jeopardy must attach thereto as a bar to appellate jurisdiction following acquittal.[8]

Appeal Quashed.[9]

---

8. Other jurisdictions are in accord with this view. *Martin Linen,* supra; *Wilmington v. General Teamsters Local Union,* 321 A.2d 123 (Del.Sup., 1974); *State ex rel. Sanborn v. Bissing,* 210 Kan. 389, 502 P.2d 630 (1972); *People v. Sabella,* 35 N.Y.2d 158, 359 N.Y.S.2d 100, 316 N.E.2d 569 (1974); cf. *U. S. v. Suarez,* 505 F.2d (2nd Cir., 1974); Anno. 24 A.L.R.3d 650.

9. Appellee has not filed a brief in this case and has not filed a motion to quash. However, appealability and jurisdiction of the appeals court may be raised *sua sponte. MacKanick v. Rubin,* 244 Pa.Super. 467, 368 A.2d 815 (1976).