614 A.2d 255

**June A. HEARD, Appellant,**

v.

**Cary L. HEARD.**

Superior Court of Pennsylvania.

Argued December 11, 1991.

Filed Aug. 20, 1992.

Eileen D. Yacknin, Pittsburgh, for appellant.

Before ROWLEY, President Judge, and KELLY and CERCONE, JJ.

CERCONE, Judge.

This is a consolidated appeal from the trial court order dated September 26, 1990.[1] On August 10, 1990, the trial court granted a protection from abuse order against both appellant ("wife") and appellee ("husband"). Wife filed timely post trial motions which the trial court denied pursuant to an order dated September 26, 1990. This appeal followed. For the reasons set forth below, we affirm in part and vacate in part the judgment entered pursuant to the September 26, 1990 order.

The trial court aptly summarized the facts of this case as follows:

The parties have been married since 1964. On July 24, 1990, pursuant to the provisions of the Protection from Abuse Act, 35 P.S. Section 10181, *et seq.*, Wife filed a PFA petition, alleging that throughout their marital relationship, Husband had caused or attempted to cause bodily harm to Wife, thus placing her in fear of imminent serious bodily harm. Wife alleged that on or about July 23, 1990, Husband pried open the parties' locked bedroom door with a crow bar, pulled her off the bed and onto the floor, and began to punch her in the eye and to kick her repeatedly in the upper torso area. Wife called the Wilkinsburg police, who responded to the call but ultimately declined to file a report of the incident. Wife then went to Divine Providence Hospital for medical treatment of bruises and soreness in ribs she sustained as a result of Husband's abusive conduct. When she returned, she learned that Husband had obtained an emergency order from a local night court authorizing him to commit her involuntarily to Western Psychiatric Hospital for psychiatric evaluation. The police arrived for a second time to escort her to the hospital, where she remained for three hours until her release. The next day, she sought the PFA order against her husband.

1. Although the order of September 26, 1990 is not a final, appealable order, the trial court entered judgment on the order on March 26, 1991. The notice of appeal filed on October 26, 1990 is timely and proper as it relates to the March 26, 1991 entry of judgment. *See* Pa.R.A.P., Rule 905(a), 42 Pa.C.S.A.

Based on Wife's petition, the court issued a preliminary order, dated July 24, 1990, granting Wife's request for a ten-day exclusion of Husband from the marital residence until final hearing. At the final hearing on August 10, 1990, the parties gave varying and largely unsubstantiated accounts of the July 24, 1990 incident and of the events that precipitated the incident. Wife's version is that it was an unprovoked attack on her by Husband, brought on by heavy marijuana and cocaine use that night. (August 10, 1990 hearing, Tr., 21). By the time the police arrived, however, she alleged Husband had flushed the marijuana down the toilet. (Tr. 22–23).

Husband denied Wife's allegation of drug use. (Tr. 90, 124). According to him, he acted in self-defense due to Wife's threats to kill him with the parties' .22 [caliber] automatic handgun, which he had reason to believe was loaded at the time. (See generally Tr. 90–124). Although he acknowledged forced entry into the bedroom with a tire iron, he maintained that he had no intention of making physical contact with Wife until, upon entry into the bedroom, he discovered she was pointing the gun at him from underneath the bedcovers. (Tr. 93–94, 121–122).

Husband further alleged that Wife had a history of alcohol and drug abuse problems, thus giving him reason to believe she was under the influence of both that night. (Tr. 103, 121–122). Wife's hospital records, which were introduced into evidence, indicate that Wife has previously sought treatment for alcoholism. (See Tr. 65). On cross-examination, Wife admitted to certain prescriptive drug use for depression and stress, but said she would not characterize it as "abuse," and, in any case, stated that she was not under the influence of either alcohol or drugs that night. (Tr. 64–69).

As to the actual threat posed to Husband by the gun, the testimony was, again, conflicting and largely unsubstantiated in both cases. Wife admitted that she had pulled the gun from the headboards of the bed, where it was usually kept, while Husband was attempting to force his way into

the bedroom. (Tr. 14–18). She said this was necessary in order to protect herself. Later, however, she testified that the gun was not functional at the time because of a malfunctioning trigger and a bullet that had previously lodged in the cylinder of the gun. (Tr. 14–18). She stated that both she and husband knew the gun was not working that night, and therefore, Husband had no reason to believe that she could have used it against him at that time. (Tr. 14–18). Wife is 5'3 and weighs 124 lbs.; Husband is 6' and weighs approximately 190 lbs. (Tr. 46).

According to Husband, the gun was, indeed, functional, and had always been functional, and that he was "terrified" when he discovered her pointing it at him. (Tr. 93–94, 121–122).

Trial Court Opinion dated 3/21/92 at 1–4. After the hearing, the judge entered an order which provided, in pertinent part:

1. The parties are:

 a. directed to refrain from abusing one another;

 b. prohibited from having any contact with one another during the exclusion period;

 c. restrained from entering each party's place of employment/business or the other party's school; and,

 d. prohibited from harassing one another.

2. [Husband] is completely excluded from the residence at 1684 McNary Boulevard, Pittsburgh, PA 15221 and from any other residence where [Wife] may live. Exclusive possession of these premises is granted to [Wife]; [Husband] shall have no right or privilege to enter or be present on the premises. [Husband] is advised that if [Husband] moves back into the residence from which this Court Order excludes him, the [Husband] can be arrested on the charge of Indirect Criminal Contempt....

11. All provisions of this Order shall expire in one year, on August 10, 1991, except that the exclusion order of Paragraph 2 shall expire on August 24, 1990.

Trial Court Order dated 8/10/90 at 1–2. Wife timely filed post-trial motions with the trial court denied. This timely appeal followed.

Wife raises the following issues for our review: [2]

■ The lower court improperly acted ultra vires the Protection From Abuse Act and without jurisdiction by issuing, sua sponte, a "mutual no abuse" order which directed the appellant, as well as her husband, not to abuse the other party, not to contact the other, not to harass the other, and not to enter the other's place of business of school.

■ Whether the lower court's sua sponte entry of a "mutual no abuse" order against the appellant unconstitutionally deprived her of her due process guarantees, because the appellant was never afforded prior notice or an opportunity to prepare a defense.

* * * * * *

■ Whether the lower court abused its discretion by issuing an exclusion order of only two weeks against the appellant's husband.

We will address these issues in order.

Wife first argues that pursuant to the specific language of the Protection From Abuse Act, 23 Pa.C.S.A. § 6101 *et seq.* (formerly 35 P.S. § 10181 *et seq.*) ("the PFA Act"), the trial court was without authority to *sua sponte* enter a "mutual no abuse" order. Specifically, wife contends that because husband did not petition the court for relief under the PFA Act, the trial court was without authority to grant him a protection order against wife. We agree.

In Pennsylvania, it is well-settled that a court must construe the words of a statute according to their plain meaning. 1 Pa.C.S.A. § 1903(a); *Commonwealth v. Stanley*, 498 Pa. 326, 335, 446 A.2d 583, 587 (1982); *Fireman's Fund Insurance Co. v. Nationwide Mutual Insurance Co.*, 317 Pa.Super. 497, 502,

---

**2.** Wife also challenges the sufficiency of the evidence supporting the protection from abuse order entered against her by the trial court. However, because of our disposition of wife's first issue, we need not reach the merits of her sufficiency claim.

464 A.2d 431, 434 (1983). When the words of a statute are unambiguous, they are not to be disregarded under the pretext of pursuing the spirit of the statute. 1 Pa.C.S.A.1921(a). Therefore, we must first determine whether the issue may be resolved by reference to the express language of the statute.

The PFA Act provides only one method by which an individual may seek relief under its provisions:

> **General Rule.** An adult or an emancipated minor may seek relief under this chapter for that person ... by filing a petition with the court alleging abuse by the defendant.

23 Pa.C.S.A. § 6106(a) (formerly 35 P.S. § 10184)). The Pennsylvania Rules of Civil Procedure likewise provide only one method by which an action may be commenced under the PFA Act:

> (a) Except as provided in subdivision (b), an action shall be commenced by filing with the prothonotary a petition setting forth the alleged abuses by the defendant.
>
> (b) Filing in the office of the prothonotary of a certified order of a district justice entered pursuant to Section 8 of the Act shall constitute the commencement of an action in the court of common pleas.

Pa.R.C.P., Rule 1902, 42 Pa.C.S.A. Once a petition has been filed, the PFA Act further provides that:

> Within ten days of the filing of a petition under this chapter, a hearing shall be held before the court, at which the plaintiff must prove the allegation of abuse by a preponderance of the evidence. The Court shall advise the defendant of the right to be represented by counsel.

23 Pa.C.S.A. § 6107(a) (formerly 35 P.S. § 10185(a)). The statute unequivocally provides that a hearing "shall be held" within ten days of the petition's filing.

 It is a cardinal rule of statutory construction that "words and phrases shall be construed according to rules of grammar, and according to their common and approved usage; . . . ." 1 Pa.C.S.A. § 1903. Unfortunately, Pennsylvania courts have fostered imprecision regarding the use of the terms "shall" and "may" in prior decisions. *Commonwealth v.*

*Ferguson,* 381 Pa.Super. 23, 33, 552 A.2d 1075, 1080 (1988). "Generally, though, the term 'shall' is construed as creating a mandatory duty, and only rarely in matters of time or form is the term construed as creating only a discretionary duty." *Mamone v. Beltone Hearing Aid Services, Inc.,* 416 Pa.Super. 555, ——, 611 A.2d 755, 757 (1992).

■■■■ To meet the special circumstances of abuse cases, the legislature fashioned procedures which suspend, temporarily, the due process rights of the alleged abuser. *In re Penny,* 353 Pa.Super. 70, 74, 509 A.2d 338, 340 (1986). "[C]ontinued suspension, irrespective of motivating factors, cannot be countenanced without judicial limits, subject to substantive or procedural restraint." *Id.* In summarizing the intentions of our legislature, this court has clarified the procedures to be used when seeking relief under the act as follows:

> The Protection From Abuse Act is a vanguard measure dealing with the problems of wife and child abuse. . . . To institute an action, the plaintiff *must* file a petition with the court alleging abuse by the defendant. If emergency relief is needed, the court may enter a temporary, ex parte order to protect the plaintiff or minor children from abuse. In any event, *a hearing must be held within ten days at which time plaintiff must prove the charges.*

*Cipolla v. Cipolla,* 264 Pa.Super. 53, 55 n. 1, 398 A.2d 1053, 1054 n. 1 (1979) (emphasis added) (citation omitted). In so stating, this court has effectively eliminated any ambiguity in the legislature's use of the term "shall." This same requirement is imposed where action is commenced through the issuance of an emergency ex parte order.[3] *In re Penny,* 353 Pa.Super. at 74, 509 A.2d at 340. Based on the above, we conclude that the term "shall" as used in section 6107 imposes a mandatory limitations period within which hearings must be conducted.

**3.** "[I]n all cases in which emergency ex parte Orders are issued under the provisions of the Act, a hearing shall be held within ten days of a motion by the parties regardless whether the order eventuated from petition under § 10185(a) [now § 6107] or from some other exigent action." *In re Penny,* 353 Pa.Super. at 74, 509 A.2d at 340.

■ Here, appellee (husband) apparently filed for and was granted an emergency protection from abuse order against wife on July 23 or 24, 1990. *See* N.T. 8/10/90 at 29–30, 98; Appellant's Brief at 10. On July 24, 1990, wife filed for and was granted a preliminary protection from abuse order against husband. The hearing on *wife's* petition scheduled for August 1, 1990 was continued because of wife's hospitalization for pneumonia. It is apparent from the record that the trial court neither scheduled nor continued a hearing on husband's petition within the 10–day limitations period set forth in the 23 Pa.C.S.A. § 6107(a). Because the limitations period on the alleged petition filed by husband had expired, the trial court had no authority to grant husband relief under the PFA Act. Accordingly, those portions of the August 10, 1990 order of the trial court granting a relief to husband against wife are reversed.

Next, wife argues that the trial court's order violated her due process rights under the constitution. However, it is well-settled that statutes must be construed whenever possible in a manner that avoids a decision on a constitutional issue. *Clapper v. Clapper,* 396 Pa.Super. 49, 53 n. 5, 578 A.2d 17, 19 n. 5 (1990). Based upon our resolution of wife's first issue, an analysis of wife's due process claim is unnecessary.

■ Finally, wife argues that the trial court abused its discretion by issuing an exclusion order of only two-weeks' duration against husband. The PFA Act provides that a protection order "shall be for a fixed period of time not to exceed one year." 23 Pa.C.S.A. § 6108(b). "The court is empowered to grant broad relief to bring about a cessation of abuse." *Cipolla v. Cipolla, supra,* 264 Pa.Super. at 55 n. 1, 398 A.2d at 1054 n. 1. Here, wife contends that the record supports a much longer exclusion of husband from the marital residence.

■ It is up to the trial court as fact finder, to judge the credibility of witnesses and to weigh their testimony. *Allegheny County v. Monzo,* 509 Pa. 26, 35, 500 A.2d 1096, 1101 (1985). On appeal, it is not the duty of this court to find facts,

but to determine if there is evidence in the record to support the trial court's findings. *Id.* Findings of fact made by the trial court and supported in the record may not be overturned absent an abuse of discretion. *Commonwealth v. Murray,* 408 Pa.Super. 435, 440, 597 A.2d 111, 114 (1991) (*en banc* ), *allocatur denied,* 529 Pa. 668, 605 A.2d 333 (1992); *Aletto v. Aletto,* 371 Pa.Super. 230, 240 n. 8, 537 A.2d 1383, 1388 n. 8 (1988). In defining "abuse of discretion," this court has stated:

> An abuse of discretion is not "merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record...." *Fee v. Fee,* 344 Pa.Super. 276, 299, 496 A.2d 793, 794 (1985)

*Monsky v. Sacks,* 403 Pa.Super. 40, 42, 588 A.2d 19, 20–21 (1991), *allocatur denied,* 529 Pa. 635, 600 A.2d 954 (1991). *See Rogers v. Johnson & Johnson Products, Inc.,* 401 Pa.Super. 430, 436, 585 A.2d 1004, 1007 (1990) (abuse of discretion requires prejudice on the part of the trial court, partiality, bias, ill-will or misapplication of law).

In the present case, the trial court was presented with two conflicting accounts of the night of July 23, 1990. Wife alleged that husband, under the influence of marijuana, was hostile and verbally abusive in their bedroom. N.T. 8/10/90 at 7–10. When husband went downstairs, she locked the bedroom door in an effort to prevent an argument. *Id.* at 11. However, husband used a "crow bar" to open the locked door. *Id.* at 13. Wife testified that she attempted to scare husband with a gun she believed to be broken. *Id.* at 14. Husband took the gun, pulled wife to the floor and proceeded to punch and kick her in the face and chest. *Id.* at 18–20.

Husband's version of the event differed from that presented by wife. He stated that after a brief exchange in the bedroom, he went downstairs. *Id.* at 92. While he was downstairs, wife came down, shouted obscenities, then locked herself in the bedroom. *Id.* at 92. When wife wouldn't open the door, husband used a tire iron to enter the bedroom. *Id.* at 93. Once inside the bedroom, wife pulled out a gun. *Id.* To

the best of his knowledge, the gun was not broken. *Id.* at 94. While struggling over the gun, husband struck wife. *Id.* After husband took possession of the gun, he restrained wife as she kicked and scratched. *Id.* at 94–95. Wife subsequently called the police.

It is obvious from the record that the trial court chose not to believe the version presented by wife *or* husband. Because the trial court is free to independently assess the credibility of witnesses, and to accept or reject the testimony presented, *Baraff v. Baraff,* 338 Pa.Super. 203, 210–211, 487 A.2d 925, 929 (1985), and because the trial court's findings have support in the record, we are constrained from finding an abuse of discretion. Therefore, we must affirm the trial court's exclusion of husband from the marital residence for a two-week period.

Order vacated as to any finding or conclusion regarding protection from wife's abuse and affirmed in all other respects. Jurisdiction relinquished.