**Beth Ann KELLY**

v.

**James C. MUELLER, Jr.**

**Appeal of: James C. Mueller, Jr., and James C. Mueller, Sr.**

Superior Court of Pennsylvania.

Submitted March 15, 2004.

Filed Nov. 4, 2004.

Eric J. Cox, Plymouth Meeting, for appellants.

Beth A. Kelly, Appellee, Pro Se.

BEFORE: STEVENS, TAMILIA and JOHNSON, JJ.

OPINION BY TAMILIA, J.:

¶ 1 In this extraordinary case, appellants, James C. Mueller, Sr. (father) and James C. Mueller, Jr. (son) appeal from an Order and Supplemental Order entered under the Protection from Abuse (PFA) Act. 23 Pa.C.S. § 6101, *et seq.* The Muel-

lers contend the trial court abused its discretion and exceeded its authority by ordering the search of their residence and father's hunting cabin, and the seizure of son's weapons and father's handgun. In its Opinion pursuant to Pa.R.A.P. 1925(a), the trial court declined to address the appropriateness of its Orders and simply asserts that the Muellers do not have standing to appeal. Upon review, we conclude that the Muellers do have standing.

¶ 2 Beth Ann Kelly and son were girlfriend and boyfriend. Shortly after their relationship ended, Kelly filed a PFA petition on September 15, 2003, alleging son had threatened to kill her. The trial court granted a temporary PFA Order and scheduled a final hearing for September 25. On September 25, son and Kelly both appeared for the hearing without counsel. Son requested a continuance so he could hire an attorney. The court rescheduled the hearing for October 14, 2003.

¶ 3 Kelly attended the October 14 hearing with her attorney, but son did not appear. Kelly testified at the hearing that son had threatened to kill her while pointing father's loaded handgun at her. She also testified to incidents of physical and verbal abuse. Kelly said son lives with his parents and when asked by the court, Kelly listed the weapons in son's home, including father's handgun. She listed, "[t]here are a couple shotguns for hunting. There are, I think, three ... bow[s] and arrows. He has brass knuckles. He has numchucks [*sic*] .... And he has a BB gun." N.T., 10/14/03, at 15. Kelly did not testify to any incidents of abuse involving any of son's weapons. She did, however, list son's bows and arrows, brass knuckles, nun chucks, and hunting gun in her PFA petition as weapons son "used or threatened to use ... against [her]." Petition for Protection from Abuse, 9/15/03, at 3.

¶ 4 The resulting Order entered by the trial court excluded son from Kelly's residence, prohibited him from having contact with Kelly and required him to turn over to police all weapons "used or threatened to be used by Defendant [son] in an act of abuse against [Kelly]." The Order listed those weapons as "any and all weapons, including but not limited to, father's handgun, [son's] hunting gun, [son's] bow and arrow, [son's] numchucks [*sic*], [son's] brass knuckles." Final Order, 10/14/03, at 3.

¶ 5 Kelly and her attorney returned to the court that same day to request a Supplemental Order. According to Kelly's attorney, when the sheriff went to son's residence later that day to collect the weapons listed in the order, son signed a statement saying there were no weapons. N.T. at 21. Following testimony from Kelly that she had seen the weapons at son's home, the court entered a Supplemental Order directing the Montgomery County Sheriff's Department to search both the residence of father and son and the family's Pocono Mountain hunting cabin. The Order directed the sheriff to seize any weapons and use whatever force necessary to enforce the Order. Supplemental Order at 1.

¶ 6 The trial court, upon ruling on an emergency motion for hearing filed by son seeking reconsideration of the October 14, 2003, Orders, dismissed the motion, finding son was not an aggrieved party and father was not a party to the action, and that therefore, neither party had standing. In so holding, the court further found,

It is this Court's belief that the broad power granted to the Court in order to protect a party from potential danger would include the right to remove all weapons within a party's control that could cause serious or grave physical injury and danger to a party. Such broad grant of power is embodied in 23

Pa.C.S.A. § 6108(a)(10). Nonetheless, if Father is contending that he is an aggrieved party, this court would most certainly schedule proceedings to entertain the issue should such be raised in an appropriate petition seeking relief from this Court upon a return of jurisdiction to the trial court.

Trial Court Opinion, Dickman, J., 12/18/03, p. 4.

¶ 7 Before addressing the issues presented on appeal, we must first consider whether the Muellers have standing to appeal the trial court's orders. "[U]nless the right of appeal is enlarged by statute, only parties aggrieved from appealable orders may appeal therefrom." *Clairton Corp. v. Chicago Title Ins. Co.,* 438 Pa.Super. 488, 652 A.2d 916, 921 (1995); *see also* Pa.R.A.P. 501. The trial court concluded father does not have standing because he is not a party, and that son does not have standing because he is not an aggrieved party. On appeal, we must determine whether the trial court erred as a matter of law or abused its discretion. *See In re Hickson,* 765 A.2d 372, 376 (Pa.Super.2000), *aff'd,* 573 Pa. 127, 821 A.2d 1238 (2003). Because standing "is a question of law, our scope of review is plenary." *In re T.J.,* 559 Pa. 118, 124, 739 A.2d 478, 481 (1999).

¶ 8 We begin by assessing father's standing. "Standing denotes the existence of a legal interest." *Commonwealth v. Whiting,* 767 A.2d 1083, 1089 (Pa.Super.2001). A party is "[a] person who commences or against whom relief is sought in a matter ...." 42 Pa.C.S. § 102. Here, relief is sought against father; the court ordered the seizure of his handgun and the search of his residence and cabin. Thus, we conclude father is, for purposes of 42 Pa.C.S. § 102, a party. *See Walker v. Walker,* 362 Pa.Super. 75, 523 A.2d 782, 783 n. 2 (1987) (concluding

that non-party against whom relief was sought was a party under 42 Pa.C.S. § 102 for purposes of standing). In addition, there are circumstances under which even non-parties have standing to appeal. *See, e.g., Walker; Green v. SEPTA,* 380 Pa.Super. 268, 551 A.2d 578 (1988) (acknowledging that plaintiff's attorney whose fees the court reduced could file an appeal in his own name). In *Walker,* an individual who was neither a plaintiff nor a defendant had standing to appeal an Order because the Order directly involved her and she was aggrieved by the Order. *See Walker,* at 783. In this case, the Orders specifically refer to father's handgun and father's hunting cabin. Furthermore, father was directly and substantially aggrieved by the Order to forcibly search and seize his property. Thus, under our caselaw, father does have standing.

¶ 9 We next consider whether son has standing to appeal. Again, as a general rule, one must be aggrieved to appeal. *See* Pa.R.A.P. 501. A party is aggrieved if he or she "has a direct, immediate, pecuniary and substantial interest in the subject matter of the litigation." *Insilco Corp. v. Rayburn,* 374 Pa.Super. 362, 543 A.2d 120, 125–26 (1988). In essence, a party is aggrieved "when the party has been adversely affected by the decision from which the appeal is taken." *Ratti v. Wheeling Pittsburgh Steel Corp.,* 758 A.2d 695, 700 (Pa.Super.2000). Although son was adversely affected by the search and seizure of his property, he was not adversely affected by the alleged violation of father's due process rights. *See Commonwealth v. Butler,* 448 Pa. 128, 131, 291 A.2d 89, 90 (1972) (holding that one cannot "assert the alleged deprivation of another's constitutional rights"); *Commonwealth v. Johnson,* 556 Pa. 216, 234, 727 A.2d 1089, 1098 (1999) (holding that "an individual whose constitutionally protected rights are

not violated cannot claim any injury by a warrantless police seizure"). Son had no direct or substantial interest in father's constitutional rights. Accordingly, son has standing to challenge the search of his residence and the seizure of his weapons, but son does not have standing to challenge the search of father's cabin and the seizure of father's handgun. We now turn to the merits of the appeal.

¶ 10 The Muellers raised the following questions for our review:

1. Did the Trial Court lack jurisdiction or authority to enter an Order providing for the search of the residence of the Appellants, the search of the hunting cabin of Appellant James C. Mueller, Sr., the seizure of all weapons in the residence and/or hunting cabin of Appellant James C. Mueller, Sr., without regard to whether they belonged to Appellant James C. Mueller, Jr., or whether they were used or threatened to be used in an act of abuse against [Kelly] and in disregard of Appellants' rights to be secure from unreasonable searches and seizures?

2. Was James C. Mueller, Sr., denied due process of law when an Order was entered substantially affecting his property rights without notice or an opportunity to be heard?

Appellants' Brief at 4. We will limit our discussion and disposition to the Supplemental Order and paragraph six of the Final Order, as those are the items being appealed. Our discussion will not address or affect the remaining paragraphs of the Final Order.

■■■ ¶ 11 We begin by addressing the second question presented for our review, that is, father's assertion that the court denied his due process rights. As stated above, son does not have standing to raise this issue. "The 'fundamental re-quirement of due process is the opportunity to be heard' at a meaningful time and in a meaningful matter." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Due process also requires adequate notice. *See In re R.M.,* 567 Pa. 646, 653, 790 A.2d 300, 305 (2002). Father maintains, and we find no evidence of record to refute, that he was not given notice or an opportunity to be heard.

■■■ ¶ 12 "Unless the court has the parties before it, by appearance or service of process, it is obvious that it cannot bind them by its adjudications." *Meritor Mortg. Corp.-E. v. Henderson,* 421 Pa.Super. 339, 617 A.2d 1323, 1326 (1992). "Lack of notice and an opportunity to be heard constitutes a violation of due process of law and results in an invalid judgment." *Shay v. Flight C Helicopter Servs., Inc.,* 822 A.2d 1, 11 (Pa.Super.2003). The Orders authorized the Sheriff's Department to forcibly enter father's home, his vehicles, and his hunting cabin, to search those spaces, and to seize father's handgun. Father's property interests were substantially affected without notice or an opportunity to be heard; as such, his due process rights were violated. For this reason we are constrained to remand this matter for additional hearings, if requested by father, to explore the continued retention by police or return of the weapons, pursuant to the safeguards provided by Section 6108(a)(7) of the PFA Act.

¶ 13 As to their first question for review, appellants challenge whether the trial court had the authority to issue the Orders in question. Specifically, they attack the court's authority to order the search of their residence and hunting cabin and seize all weapons found, regardless of ownership. They also attack the court's authority to order the seizure of all weapons found during the search, because there was no evidence of record that son used

those weapons to abuse Kelly. Finally, appellants maintain the Orders constitute unreasonable searches and seizures.

¶ 14 Preliminarily, we note that appellants did not preserve part of their argument for our review. The Muellers did not raise in their Concise Statement of Matters Complained of on Appeal the issue that the weapons were allegedly seized without regard to "whether they were used or threatened to be used in an act of abuse against [Kelly]." Appellants' Brief at 4. This is a distinct issue from the four specific issues raised in the Rule 1925 statement. The Rule 1925 statement questioned: (1) the court's authority to order the search of the residence belonging to a non-party, (2) the court's authority to order the seizure of weapons belonging to a non-party, (3) the court's authority to order the seizure of weapons and search of the hunting cabin, which belong to non-parties, and (4) the alleged denial of father's due process rights. Appellants' Brief at 22. Appellants' omission eliminated the trial court's opportunity to address the issue of whether the seized weapons were used or threatened to be used in an act of abuse against Kelly. *See Commonwealth v. Lemon,* 804 A.2d 34, 36–37 (Pa.Super.2002) (acknowledging that the Rule 1925 statement gives the trial court the opportunity to address the issues that the appellant will present on appeal). Thus, we will not consider this issue. *See id.* at 36 (holding that issues not raised in the Rule 1925 statement are waived on appeal).

¶ 15 We now consider whether the trial court exceeded its authority and abused its discretion in ordering the searches and seizures at issue. "The trial court has discretion in choosing between remedies afforded by the [PFA Act], and this Court will review the trial court's determination of what constitutes an appropriate remedy only for abuse of discretion." *Commonwealth v. Snell,* 737 A.2d 1232, 1235 (Pa.Super.1999). An abuse of discretion has occurred when the trial court's order is "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will [*sic*] . . . or without support in the record." *Snyder v. Snyder,* 427 Pa.Super. 494, 629 A.2d 977, 984 (1993).

¶ 16 The PFA Act specifically grants the trial court the power to require son to relinquish his property:

**(a) General rule.** The court may grant any protection order . . . to bring about a cessation of abuse of the plaintiff or minor children. The order or agreement may include:

. . .

(7) Ordering the defendant to temporarily relinquish to the sheriff the defendant's weapons which have been used or been threatened to be used in an incident of abuse against the plaintiff or the minor children and prohibiting the defendant from acquiring or possessing any other weapons for the duration of the order . . . .

23 Pa.C.S. § 6108(a)(7). This section grants the court the authority to require the alleged abuser to relinquish the instrumentalities of his or her abuse; it does not grant the court the authority to order the Sheriff's Department to search the abuser's residence or other property and forcibly seize weapons. Accordingly, we must determine whether the trial court exceeded its authority and abused its discretion in choosing between remedies afforded by the PFA Act.

¶ 17 At the outset, since son did not appear at the PFA hearing on October 14, 2003, to contradict or supplement the appellee's testimony in any regard, her statements as accepted by the trial judge to be

credible and as appear on the record support the extremely dangerous and violent circumstances appellee faced with regard to son. From the perspective of that record and the application of the law as delineated in the PFA Act, we conclude the trial court, in accordance with the legislative mandate, 23 Pa.C.S.A. § 6108, **Relief** (a)(7), was acting within its discretion and used its inherent powers as a judge to make an appropriate decision under the facts and circumstances of this case.

■ ¶ 18 Although the trial court may have had alternatives available other than intrusions on father's premises and property that violate our hallowed protection against search and seizure, the issue became one of whether the other available options were as efficacious under the circumstances and would achieve the required result, protection of appellee from possible death or serious injury. *Snyder, supra,* instructs that the trial court possesses discretion in choosing between remedies afforded by PFA Act and that this Court will review the trial court's determination as to the appropriate remedy only for abuse of discretion. *Id.* at 984. Nothing in the Act suggests that a court must risk taking the least burdensome remedy. *Id.* at 986.

■ ¶ 19 We begin our analysis from the position that to meet special exigencies of abuse cases, the legislature fashioned acceptable PFA procedures which temporarily suspend due process rights of the alleged abuser and provide for summary procedures for implementation of Orders. *In re Penny R.,* 353 Pa.Super. 70, 509 A.2d 338, 340 (1986); *see also Eichenlaub v. Eichenlaub,* 340 Pa.Super. 552, 490 A.2d 918 (1985). The PFA Act is a vanguard measure dealing with problems of husband, wife and children or people in intimate relationships. *Cipolla v. Cipolla,* 264 Pa.Super. 53, 398 A.2d 1053 (1979). Among the rights temporarily suspended is possession of one's residence. *Heard v. Heard,* 418 Pa.Super. 250, 614 A.2d 255 (1992) (affirming the complete exclusion of husband from the residence); *Dye for McCoy v. McCoy,* 423 Pa.Super. 334, 621 A.2d 144 (1993) (holding a court may alter terms of custody Order which conflict with PFA Order). In *Eichenlaub, supra,* this Court held the denial of a jury trial in an indirect criminal contempt proceeding was constitutional as enabling a court to respond quickly and flexibly to an advanced warning of abuse. Moreover, temporary PFA Orders may be entered *ex parte,* without notice, pending notice and hearing in court, 23 Pa.C.S.A. § 6107(b) **Temporary orders**; *see also Penny R., supra.* Such an Order will follow upon the victim's or a third party's demonstration that abuse has in fact occurred. *Id.* Procedurally, the Rules of Civil Procedure govern the PFA Act; the Rules of Criminal Procedure do not apply and post-trial motions are not required to preserve issues for appeal in any domestic relations matter. Pa.R.C.P. 1930.2(a), **No Post-Trial Practice. Motions for Reconsideration.** The Act is not meant to penalize past criminal conduct; rather, the primary goal of the Act is to prevent physical and sexual abuse. *Snyder, supra.*

¶ 20 When the above considerations are applied to the discretionary review of the individual cases appearing before the trial court, the traditional application of due process and constitutional protections, particularly of due process as applied in criminal proceedings, is subject to the query "what process is due?"

¶ 21 This approach has been utilized in the domestic relations and juvenile fields by the United States Supreme Court in the past 40 years, beginning with *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) (holding a juvenile

court has considerable latitude in determining whether a child should be certified to the adult court, but must provide fairness and basic due process including a faster though informal hearing, the assistance of counsel, access to social records and findings by the court as to reasons for certification.); *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (holding trial by jury is not constitutionally required for juveniles).

¶ 22 It is clear that due process as applied to the multi-faceted area of family cases is driven by the disparate needs of the parties, their relationship to each other and the public welfare as represented by state action. Children have constitutional rights but not the full panoply of those ascribed to adults. Parents have fundamental rights in relation to their children, but they are subject to the child's best interest and parental fulfillment of their duties. Presumptions no longer govern relationships in marriage, childcare and custody, as was the case at common law. Due process has become a variable mandate proportionate to the needs of society and its citizens. Burden of proof and evidence is apportioned to the party most properly required to establish the efficacy of the petition or complaint. A useful concept in criminal law, and to a lesser degree in family law, is the totality of circumstances. Application of this parameter to individual cases permits the flexibility necessary to judges, police officers, counselors and probation officers to fulfill the legislative intent in widely divergent situations.

¶ 23 In this case, we believe the facts warranted a finding by the trial judge that appellee was in serious danger due to threats by son to use one of several weapons which could result in appellee's death or serious injury. We conclude the law as expressed in PFA Act Section 6108(a)(7) is sufficiently explicit and broad to deal with weapons, once adequately described under oath, to the same degree that an affidavit of probable cause would have been permissible to authorize a search and seizure. The testimony by appellee and police that when presented with the Order of confiscation, son denied the existence of such weapons, in combination with his failure to appear at the PFA hearing, only could have increased the anxiety and threat appellee suffered due to son's behavior. The Supplemental Order, which we find complied with due process under the circumstances, was within the general intent of section 6108(a)(7) to confiscate the weapons. Exigent circumstances required that no further hearing be initiated at that time. The fact that father was not a party did not exempt his home, cottage and automobile from search for identified weapons which his live-in son would have had available to carry out his threats. If a court cannot reach weapons located wherever an abuser resides, it nullifies the preventive thrust of the most critical section of the Act, that is, to disarm the abuser. Every person in close proximity to the abuser would be in danger, including his father, the police, and appellee. Permitting son to remain in the house with father, without surrender of the weapons based upon father's claim of privacy, would be irresponsible.[1]

1. C. Everett Koop, M.D., former Surgeon General of the United States, identified domestic violence as the number one health problem of American women. Each year two to four million women are seriously assaulted by male partners and more than half of the women murdered in the United States are killed by a male partner. More women are injured or killed as a result of domestic violence than by automobile accidents, rapes or muggings. Wilder, *Pennsylvania Family Law Practice and Procedure* (1998), quoting from

¶ 24 The trial court and counsel for appellants both suggest that further hearings be held to resolve the issue raised by this case. The trial court suggests that father file a petition as an aggrieved party thereby affording the court an opportunity to explore appropriate possibilities of relief. In a similar vein, appellants would have this Court reverse and remand the case for further hearings and imposition of a new Order in compliance with the PFA Act. As provided by section 6108(a)(7) of the Act, "[t]he court's order shall provide for the return of the weapons and any firearm license to the defendant subject to any restrictions and conditions as the court shall deem appropriate to protect the plaintiff ... from further abuse through the use of weapons." This provides for the maximum protection while limiting the intrusion. This approach is also consistent with that of *Penny R., supra,* which provided for a follow-up hearing to determine the appropriateness of the Order in that case.

¶ 25 We affirm the trial court's Orders, but remand for additional hearings to be scheduled by the court following petition by father. The hearings should explore the continued retention by police or return of the weapons, pursuant to the safeguards provided by section 6108(a)(7).

¶ 26 Orders affirmed; case remanded for proceedings consistent with this Opinion.

¶ 27 Jurisdiction relinquished.

¶ 28 Concurring and Dissenting Opinion by JOHNSON, J.

CONCURRING & DISSENTING OPINION BY JOHNSON, J.:

¶ 1 I concur with the Majority's amply supported and well-reasoned discussions on the issues of standing, waiver, and Father's ability to petition for relief. However, because there is no basis for concluding that search and seizure is an available remedy under the Protection from Abuse Act (the Act), I dissent from the Majority's justification of it and, therefore, its conclusion that the trial court did not abuse its discretion in ordering a remedy far beyond the bounds of the Act.

¶ 2 Throughout its Opinion, the Majority assumes that search and seizure is an available remedy under § 6108(a)(7). *See* Majority Opinion (M.O.) at 991 ("The trial court has discretion in choosing between remedies afforded by the [PFA Act]"); M.O. at 991 ("Accordingly, we must determine whether the trial court ... abused its discretion in choosing between remedies afforded by the PFA Act."); M.O. at 992 ("Nothing in the Act suggests that a court must risk taking the least burdensome remedy."). The Majority fails to cite to any legal authority under which the search and seizure could be construed as an appropriate remedy. This omission is not surprising, however, because there is no legal basis for upholding the search and seizure. The Majority admits as much when it acknowledges that § 6108(a)(7) "does not grant the court the authority to order the Sheriff's Department to search the abuser's residence or other property and forcibly seize weapons." M.O. at 991–92. Despite this admission, the Majority relies solely on this section for its affirmance of the trial court's orders and assumes that § 6108(a)(7) bestows the authority on the trial court to issue the orders before us. I cannot join in this analysis.

¶ 3 Search and seizure is not expressly listed as an available remedy under the Act. Regarding weapons, the Act says only that when issuing a final PFA order, the trial judge may: (1) order the defen-

dant to relinquish the weapons that he or she used or threatened to use in an act of abuse, (2) order the defendant to relinquish his or her firearm license, and (3) prohibit the defendant from acquiring or possessing any other weapons. *See* 23 Pa.C.S. § 6108(a)(7). Noticeably absent from this list is the search and seizure of the defendant's property. In fact, nowhere in the Act is a search of the defendant's property described, and the Act expressly authorizes the seizure of a defendant's weapons only in the section entitled "Arrest for Violation of Order." *See* 23 Pa.C.S. § 6113. The Act does not acknowledge search and seizure as an available remedy under § 6108(a)(7).

¶ 4 Search and seizure is not implicit in the Act, either. The Majority argues that search and seizure was within the intent of the Act, even though it was not expressly included in the copious list of available remedies. *See* M.O. at 993–94. I cannot agree. When it intends for seizure to be an available remedy, the legislature specifically includes it in the Act. For instance, the legislature expressly authorizes the seizure of the defendant's weapons when a defendant is arrested for violating a PFA order. *See* 23 Pa.C.S. § 6113. Furthermore, even if the list of remedies in § 6108(a)(7) is not exhaustive, it does not follow that search and seizure is analogous to the remedies listed. The right to be free from searches and seizures is "the most comprehensive of rights and the right most valued by civilized men." *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887, 898 (1991). Being protected from unwarranted searches and seizures "*is second to none* in its importance in delineating the dignity of the individual living in a free society." *Id.* at 899 (emphasis added). The violation of this most precious right to which the appellants were subjected cannot be equated with the temporary due process infringements listed in § 6108(a)(7).

¶ 5 To show that search and seizure was within the intent of the Act, the Majority writes, "the legislature fashioned acceptable PFA procedures which temporarily suspend due process rights," M.O. at 992, and cites cases in which the alleged abuser's due process rights were temporarily suspended. The Majority neglects to mention, however, that *in each case it cites, the due process "violation" was in complete accordance with the remedies explicitly listed by the legislature in § 6108(a)(7) or its predecessor. See In re Penny R.,* 353 Pa.Super. 70, 509 A.2d 338, 340 (1986) (following the Protection from Abuse Act then in effect, 35 P.S. § 10185); *Eichenlaub v. Eichenlaub,* 340 Pa.Super. 552, 490 A.2d 918 (1985) (following 35 P.S. § 10190); *Heard v. Heard,* 418 Pa.Super. 250, 614 A.2d 255 (1992) (following 23 Pa. C.S. § 6108(a)(2)); *Dye for McCoy v. McCoy,* 423 Pa.Super. 334, 621 A.2d 144 (1993) (following 23 Pa.C.S. § 6108(a)(4)). These cases are utterly inapposite and cannot justify a due process infringement not "fashioned by" the legislature.

¶ 6 Finally, pervasive in the Majority Opinion is its belief that search and seizure was the most effective way to protect Ms. Kelly. This supposition overlooks the trial court's gross infringement on a constitutional right in a way never contemplated by the legislature. Our Supreme Court has expressly rejected the "ends justifying the means" analysis regarding search and seizure and has admonished this Court accordingly:

> By focusing its attention only upon the serious ills inflicted upon society by illegal narcotics, the Superior Court failed to recognize and respond to necessary constitutional constraints on excessive police conduct. The seriousness of the criminal activity under investigation,

whether it is the sale of drugs or the commission of a violent crime, can never be used as justification for ignoring or abandoning the constitutional right of every individual in this Commonwealth to be free from intrusions upon his or her personal liberty absent probable cause.

*Commonwealth v. Rodriquez,* 532 Pa. 62, 614 A.2d 1378, 1383 (1992).

¶ 7 While the prevention of domestic violence is indeed a worthy goal, the trial court exceeded its authority by ordering a remedy far beyond what the legislature established or intended. Search and seizure was not the only effective way of protecting Ms. Kelly. The trial court had at its disposal a way to afford Ms. Kelly the same degree of protection without infringing on the appellants' constitutional rights. Had the trial court issued an order pursuant to § 6108(a)(7) expressly prohibiting Son from possessing or acquiring weapons for the duration of the order, then the police could have arrested Son for possessing weapons upon a finding of probable cause that Son had weapons. *See* 23 Pa.C.S. § 6113(a). After arresting Son, the police officer could then "seize all weapons used or threatened to be used … during prior incidents of abuse." 23 Pa. C.S. § 6113(b). This procedure would have preserved the appellants' constitutional rights, and would have provided Ms. Kelly with the same degree of protection as the course of action taken. Accordingly, I conclude that the Majority's underlying premise that the trial court's extraordinary actions were the only way to provide Ms. Kelly with adequate protection is false.

¶ 8 I am not arguing that the trial court did not choose the least burdensome remedy from among a list of available remedies. Again, the search and seizure ordered by the trial court was not an available reme-dy. The Act provided the necessary tools to protect Ms. Kelly without infringing on the appellants' constitutional rights in a way never contemplated by the legislature. The trial court disregarded these tools and created its own remedy without any justification.

¶ 9 For the reasons herein explained, I would find that the trial court abused its discretion and exceeded its authority in ordering the search and seizure of the appellants' property. Accordingly, I would vacate the Supplemental Order in its entirety. Therefore, I respectfully dissent from the portion of the Majority Opinion dealing with the search and seizure.