# Johns v. Maloy

C.P. of Washington County, no. 2005-8684.

*John Paul Lewis,* for plaintiff.
*Charles Kurowski,* for defendant.

MASCARA, *J.,* February 9, 2006—Defendant, Michael Maloy, has appealed to the Superior Court of Pennsylvania from this court's order of December 1, 2005. Plaintiff filed a petition for protection from abuse on November 23, 2005. The petition stated that the defendant, Michael Maloy, was trying to control the plaintiff

by telling her not to go through with the child support hearing "or else." Plaintiff alleged that defendant threatened to withhold the baby until the support case was withdrawn.

As to incidents of past abuse, plaintiff alleged in her petition that the defendant made a threat, in August 2005, to kill her and her family if she didn't get back together with him. Additionally, plaintiff claimed that the defendant has punched her, thrown her down stairs, and kicked her in the ribs, face and back. Plaintiff explained in her petition that, on one occasion, defendant hit her so hard in the ear that it knocked her out for a couple of seconds. Finally, plaintiff alleged that defendant controlled her and didn't allow her to go anywhere. Upon review of the petition for protection from abuse, this court signed the temporary order for protection from abuse and set a final hearing date for December 1, 2005.

After hearing testimony from plaintiff and defendant on December 1, 2005, and upon review of the record, this court granted plaintiff's request for a final protection from abuse order. In paragraph five of the final order, the court ordered that custody would be shared on a 3-4/4-3 basis. The parties were granted permission to communicate for purposes of effectuating custody exchanges. Additionally, it was outlined in the order that the exchanges would take place at Frosty Kiss[1] at 7 p.m. In paragraph seven of the order, the court instructed defendant to undergo random monthly drug and alcohol tests through the Washington County Adult Probation

---

1. This was a location known to both litigants located at 1910 East National Pike, Scenery Hill, PA 15360.

Office. It was also noted that defendant's custody rights would be suspended if he tested positive. The final protection from abuse order was entered for a period of 18 months.

The defendant filed a timely appeal to the Pennsylvania Superior Court in accordance with Pa.R.A.P. 903(a). On December 16, 2005, this court ordered defendant to file a concise statement of matters complained of on appeal in accordance with Pa.R.A.P. 1925(b).

The defendant filed his concise statement on December 29, 2005. At that time, defendant raised five issues. In four of the five issues, defendant alleges that this court abused its discretion and committed an error of law by issuing a PFA against defendant. The final issue complained of is that the plaintiff did not prove any allegations of abuse or imminent harm necessary to meet the preponderance of the evidence standard.

The most recent incident of abuse alleged by plaintiff took place on November 22, 2005. The first witness to testify at the hearing was the plaintiff, Angela Johns. She testified that the defendant called her on November 22, 2005, demanding that she drop the child support action that she had filed "or else." Defendant also allegedly told plaintiff that since they were going to get back together they didn't need the child support action. Plaintiff then explained to the court that she asked the defendant, "[o]r else what?" According to the plaintiff's testimony, the defendant responded, "[o]r else I just won't give you the baby back; you will never see her until your drop this court hearing." See N.T., pp. 2-3. Plaintiff admitted that this was the only incident in the month of November,

however, she provided testimony regarding an incident in August 2005.

Plaintiff alleged that in mid-August, defendant asked her where her new residence was. Plaintiff continued her testimony by explaining that when she wouldn't tell the defendant where she lived, he threatened to kill her and her family. Plaintiff then also described an incident in May 2005 when the defendant was demanding money from her and she did not have any money. Plaintiff alleged that defendant stated, "[i]f you don't have any money, I'm going to start tearing this place from limb to limb." See N.T., p. 6. Plaintiff indicated that she called 911 at that time and a tape was made in which defendant could be heard trashing the house and screaming at the plaintiff.

As to other incidents of past abuse, plaintiff testified that defendant physically abused her in March 2004. Specifically, plaintiff alleged that defendant pushed her down to the floor. Plaintiff indicated that when she began to defend herself, defendant threw her to the ground continuously, kicked her, and punched her in the face. Plaintiff explained that defendant was arrested that night. When questioned as to whether anything happened with the house during this incident, plaintiff alleged that defendant "totally trashed the house. He put the microwave through the glass table that we had, put a big hole in the wall with the microwave, busted up a couple windows, totally busted up my new bedroom furniture I had to get replaced." See N.T., p. 9. The plaintiff next testified about an incident in the summer of 2002. She explained to the court that the defendant came to her residence and pushed her down the steps. Plaintiff indicated that the defendant

left for awhile and when he came back that same day, "[h]e pushed me up against the car, and I pushed him away, and then when I went to walk away, he like tackled me, threw me down on the ground, and I hit my head off of a big rock that was in the ground." See N.T., p. 10. Plaintiff continued her testimony by explaining that the defendant was picked up by the police that night because he was out of control. She also indicated that he had to be maced that evening and he spent two nights in jail.

The plaintiff testified that in the summer of 2003, defendant threatened to burn the house down. She stated: "he got a gasoline can out and told me he was going to burn the house down with me in it, and that he was going to tell the police, the fire department, that he thought that I was behind it. . . ." See N.T., p. 11. Plaintiff explained that this comment scared her and she called the police. Plaintiff alleged that the defendant never allowed her to go places when they were together. Additionally, she indicated that he would call her constantly at work.

On cross-examination, plaintiff testified that the defendant did not have visits with the child from August 25 to September 13 because he was in rehab. Plaintiff answered in the affirmative when she was asked if she is afraid that the defendant will threaten her with bodily harm or death. Defendant's attorney then presented some photographs to the plaintiff.[2] Plaintiff explained that she was not in fear at the time the photos were taken, because defendant's parents and grandparents were present.

---

2. The photographs used by defendant's attorney were never introduced as exhibits and, therefore, do not accompany this opinion.

When asked by defendant's attorney if she filed the PFA because it "was the only way [she] could get her baby back," plaintiff responded, "[w]ithout me getting harmed." See N.T., p. 18. The issue of defendant spending time in rehab came up once more on cross-examination. The court briefly interrupted plaintiff's testimony to ask why defendant was in rehab. Defendant admitted that it was for alcohol. Plaintiff then alleged that it was not only for alcohol, but also for crack cocaine and gambling.

Finally, on redirect examination plaintiff's attorney asked her why she cannot approach defendant to request return of the child. Plaintiff answered, "[b]ecause I wasn't going there and end up getting hurt, because he told me, do not come there, and I didn't know what he was going to be doing, considering that he was screaming on the phone with me the day before." See N.T., p. 20.

The defendant, Michael Maloy, then provided his direct testimony to the court. Defendant admitted again that he had spent 14 days in rehab which began on August 28, 2005. When questioned by the court as to whether the rehab was for alcohol only, defendant answered, "[d]rug and alcohol. I voluntarily went in." See N.T., p. 23. On cross-examination, defendant explained that he felt that he needed some help with his drug and alcohol problem. Defendant denied making any threats of physical harm to plaintiff or her family. Defendant testified that he was shocked by the filing of the PFA because plaintiff has never indicated that she fears him. Defendant was not questioned on direct or cross-examination as to whether he ever physically abused the plaintiff.

This court believes that the primary purpose of the Protection from Abuse Act is to protect victims of domestic violence and to prevent further acts of domestic violence. Abuse is defined in the Pennsylvania Protection from Abuse Act at section 6102, as: (1) attempting to cause or intentionally, knowingly or recklessly causing bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon, (2) placing another in reasonable fear of imminent serious bodily injury, (3) infliction of false imprisonment, (4) physically or sexually abusing minor children, including such terms as defined in chapter 63 (relating to child protective services), or (5) knowingly engaging in a course of conduct or repeatedly committing acts toward another person including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. 23 Pa.C.S. §6102.

The first, second and fifth issues complained of on appeal are whether the court committed an error of law and a "complete" abuse of discretion when a PFA was granted in this matter. The fourth issue is whether plaintiff provided evidence to the court of abuse or imminent harm which was sufficient to meet the preponderance of the evidence standard. These issues are not concise, but they are related and will be discussed collectively.

This court granted the relief requested by the plaintiff for a number of reasons. While the case may have initially sounded as if it was "custody-based," as the testimony proceeded, plaintiff clearly met the requisite bur-

den of proof for protection from abuse cases, which requires plaintiff to prove her case by a preponderance of the evidence. Additionally, the court found plaintiff to be a credible witness.

It is well settled that the Pennsylvania Superior Court defers to the credibility determinations of lower courts as to witnesses who appear before it. *Miller on Behalf of Walker v. Walker,* 445 Pa. Super. 537, 543, 665 A.2d 1252, 1255 (1995). In *Miller on Behalf of Walker v. Walker,* the plaintiff, Rhonda Miller, filed a protection from abuse action on behalf of her two children against their father, Lawrence Walker. Plaintiff's petition alleged that defendant had beaten one of the children, Joshua, with a board and had thereby caused bruising. Furthermore, plaintiff contended that the other child, Crystal, had seen and heard her brother being spanked. Plaintiff provided testimony at the hearing regarding incidents of abuse to the children that had taken place six years prior to filing. Plaintiff's request for a final protection from abuse order was granted and defendant was allowed supervised visitation with the children.

One of the primary arguments by the appellant in *Miller on Behalf of Walker v. Walker* was that the appellee did not establish with "credible" evidence that "bodily injury" had occurred to the minor child as would meet the standards and definitions of the Protection from Abuse Act. *Id.* at 545, 665 A.2d at 1256. The Court of Common Pleas of Montgomery County in the lower court case of *Miller v. Walker* found that plaintiff had established the allegations of abuse by a preponderance of the evidence, and furthermore stated that Mr. Walker was not a credible witness. *Miller v. Walker,* 24 D.&C.4th 259, 262

(1995). The Superior Court found no merit in appellant's credibility argument and stated, "[t]he trial court . . . acted properly in assessing the credibility of the witnesses, and the evidence supports the trial court's finding." *Miller on Behalf of Walker v. Walker,* 445 Pa. Super. at 545, 665 A.2d at 1256 (1995).

In the case sub judice, the court found plaintiff, Angela Johns, to be a credible witness. Her demeanor and voice fluctuation indicated that she was truly frightened of the defendant. Defendant, on the other hand, was not credible. For example, the first time that he was questioned about rehab, he simply stated that it was for alcohol. See N.T., p. 19. When questioned further, defendant disclosed that he admitted himself to a facility due to his use of both drugs and alcohol. See N.T., p. 23. When asked by the court if he went to rehab for crack cocaine, defendant did not specifically admit to the use of *that* drug, but instead maintained the broad statement that he went to rehab for drugs and alcohol. Based on the testimony given and the demeanor of the parties, this court resolved the credibility issue in favor of plaintiff, Angela Johns.

In the case of *Counterman v. Shoemaker,* 14 D.&C.4th 217 (1992), *aff'd,* 427 Pa. Super. 648, 625 A.2d 95 (1992), the Pennsylvania Superior Court affirmed the lower court decision that a threat to kill is sufficient basis for issuance of a protection from abuse order. In *Counterman,* the plaintiff filed a PFA against her former boyfriend. The plaintiff alleged that the defendant had told her over the telephone that he had a gun and he would kill her, her fiance, and other family members. The lower court held that, "the Act which defines abuse, does not

require actual or attempted physical violence." *Counterman v. Shoemaker,* 14 D.&C.4th at 218 (1992). Additionally, the court opined, "[t]he inquiry centers on plaintiff's fear and not any actual injury inflicted." *Id.* at 219, citing *Ickes v. Ickes,* 3 D.&C.4th 166 (1989). The lower court in *Counterman* found that defendant's threats constituted abuse. The Superior Court subsequently affirmed this decision without opinion.

In this case, the court believes that plaintiff, Angela Johns, met the requisite burden of proof. While defendant alleges in his concise statement that plaintiff filed the PFA only to get her child back, this court does not agree. Plaintiff admitted that the motivating factor in filing the PFA was to get her baby back *without the risk of injury to herself,* or in her own words, "without getting hurt." See N.T., pp. 18, 19. She stated that defendant was "screaming" at her on the phone the day before she filed the PFA. See N.T., p. 20. Plaintiff also provided extensive testimony of threats as well as actual physical harm inflicted by the defendant. Plaintiff described in detail these numerous incidents of physical abuse directed at her by the defendant. She provided detailed accounts of events whereby defendant destroyed household items and the police had to be notified. It was clear to the court by the close of plaintiff's testimony that this action was not rooted in custody, but was based upon plaintiff's sincere fear of bodily harm from the defendant. This court believes that in accordance with the Superior Court's decision in *Counterman,* the recent threat to kill plaintiff and her family would, in and of itself, provide sufficient evidence for the issuance of a PFA. The threats and physi-

cal violence testified to by plaintiff in this matter undoubtedly qualify as "abuse" under 23 Pa.C.S. §6102(1) and §6102(2).

In *Miller on behalf of Walker v. Walker*, another contention made by the defendant was that testimony relating to prior instances of abuse dating back six years was improperly admitted. On this issue, the Superior Court held, "some flexibility must be allowed in the admission of evidence relating to past acts of abuse." *Miller on behalf of Walker v. Walker*, 445 Pa. Super. at 552, 665 A.2d at 1259, citing *Snyder v. Snyder*, 427 Pa. Super. 494, 503-504, 629 A.2d 977, 982 (1993). Furthermore, the court stated, "[d]espite a time period of six years, it was not an abuse of discretion for the trial court to hear evidence related to prior abuse of the children. In light of the protective purposes of the Act, it was within the trial court's discretion to hear any relevant evidence that would assist it in its obligation to assess the appellee's entitlement to and need for a protection from abuse order. . . . [p]ast abusive conduct on the appellant's part was a crucial inquiry necessary for entry of a proper order." *Miller on behalf of Walker v. Walker*, 445 Pa. Super. at 552, 665 A.2d at 1259.

Similarly, in the case at hand, this court found plaintiff's testimony of past abuse to be highly probative and relevant. The incidents of abuse alleged by plaintiff in her testimony dated back to the summer of 2002. This court believes that the frequency and duration of the abuse not only strengthened plaintiff's case, but also helped to illustrate the necessity of entering a final protection from abuse order in this matter.

In a subsection of the first issue in his concise statement, defendant suggests that the court's inquiries during plaintiff's testimony were improper and suggestive. Pennsylvania Rule of Evidence 611(a) governs the court's control during interrogation and presentation. The rule states:

"The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time and (3) protect witnesses from harassment or undue embarrassment." Pa.R.E. 611(a).

Accordingly, this court asked questions of the plaintiff during her testimony for purposes of clarity and efficiency. This court was not, in any way, attempting to "lead" the witness. It is the duty of the court to ascertain the truth, and it is necessary at times to clarify statements of a witness in order to reach an impartial decision.

The final issue which must be addressed is found at number three of defendant's concise statement of matters complained of on appeal wherein the defendant complains that the court committed an error of law and abuse of discretion by requiring defendant to undergo drug testing. Specifically, defendant argues that drug testing was not an issue because defendant had completed outpatient treatment. Defendant also argues that drug testing is not a remedy under the PFA law. Finally, defendant complains that ordering drug testing was a violation of defendant's rights against self-incrimination. This argument is absurd.

The court is empowered to grant broad relief to bring about cessation of abuse. See *Heard v. Heard,* 418 Pa. Super. 250, 614 A.2d 255 (1992). The Protection from Abuse Act contains many different alternatives for relief when a protection order is granted. The Act provides, in pertinent part:

"The court may grant any protection order or approve any consent agreement to bring about a cessation of abuse of the plaintiff or minor children. The order or agreement may include: (10) Granting any other appropriate relief sought by the plaintiff." 23 Pa.C.S. §6108(a)(10).

In paragraph 25(i) of her petition for protection from abuse, plaintiff requested that the court "[g]rant such other relief as the court deems appropriate." See plaintiff's petition for protection from abuse. Given the custody component of the PFA order, the court deemed it necessary to order mandatory drug testing for defendant. Such relief was ordered as a means of eliminating future abuse of the plaintiff and assuring the safety of the child as well. The other related sub-issues argued by defendant in his concise statement have no merit and can be countered by defendant's own admissions. When the court explained the procedures for mandatory drug testing, defendant responded, "I have no problem with that, your honor. I was going to say whatever it takes to prove that I'm staying clean and sober." See N.T., p. 29.

After a thorough review of the record, a review of pertinent statutory law and case law, and based upon the testimony of the parties, this court believes that granting a final protection from abuse order was both fundamental and proper.