J-S31035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHARLOTTE A. BELLAS, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BRYAN P. GAUGHAN, | : | |
| | : | |
| Appellant | : | |
| | : | No. 1721 MDA 2015 |

Appeal from the Order Entered September 16, 2015,
In the Court of Common Pleas of Lackawanna County,
Civil Division, at No(s): 15-FC-41128

BEFORE: SHOGAN, OTT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:               **FILED MAY 24, 2016**

Appellant, Bryan P. Gaughan, appeals from the order which granted the request of Charlotte A. Bellas for a final Protection from Abuse (PFA) order pursuant to the PFA Act (the Act), 23 Pa.C.S. §§ 6101-6122. We affirm.

The trial court summarized as follows the incident that prompted Bellas to file a PFA petition.

> At approximately 5:00 p.m. on August 22, 2015, [Gaughan] drove his motorcycle over to 417 Harwood Avenue in Clarks Summit, Pennsylvania, the home of his ex-girlfriend, [Bellas]. According to Bellas, Gaughan "walked in" and "looked intoxicated." She became upset due to Gaughan's apparent "drinking and driving," "asked him to leave [her] alone," and "walked away from him." Gaughan refused and then followed Bellas through the house. She described the incident as follows:

_____

* Retired Senior Judge assigned to the Superior Court.

He realized I was upset, so I walked away from him. That's why I walked into my kitchen; he followed me. I walked onto my balcony, he followed me. I said, "Please leave me alone." I walked into my living room. I walked upstairs to my bedroom. I was just walking all over the place to avoid him at that moment because I was clearly upset and I just wanted - I didn't want anything to do with him.

…

He followed me everywhere inside my home.

While upstairs, Bellas thought "something was going to happen," so she told her daughters, ages six and nine, to stay in their rooms. She then walked downstairs and asked Gaughan to leave "more than five times." Bellas testified that Gaughan replied, "No, you're going to have to make me." As a result, Bellas called the Clarks Summit Police Department. While making the call, she says that Gaughan called her a "cunt," "whore," and "slut."

Shortly thereafter, Gaughan began "gathering his belongings" inside Bellas's bedroom. When he left the bedroom, Bellas closed the bedroom door and locked herself inside. She says that Gaughan then slammed it open with force. Gaughan, however, contends that he "[j]ust opened it," and that "[i]f it was locked, it wasn't forceful." Bellas testified that when Gaughan found her on the bed, he "grabbed [her] by the ankles and … ripped [her] off [the] bed." During his direct examination, Gaughan flatly denied Bellas's allegations of physical abuse. When pressed on cross-examination, Gaughan claimed that Bellas had actually "lunged at [him] and fell off her bed," landing on "her butt." Bellas maintains, though, that her back slammed off the floor when she landed. When she stood, Gaughan "grabbed [her] shoulders … tightfully [*sic*] with a grip and was just screaming in [her] face …." Bellas again screamed at Gaughan to leave.

Gaughan followed Bellas downstairs, then called a friend and invited him over to borrow his motorcycle. Bellas grabbed Gaughan's phone and said, "You are not welcome at my house." Gaughan then wrestled Bellas into the couch and took the phone

back. Bellas testified that Gaughan then threw his own motorcycle keys out into Bellas's front yard so that his friend could retrieve them without Gaughan having to exit the house. Gaughan eventually walked outside to retrieve the keys anyway, at which time Bellas closed and locked the front door. Gaughan then called the police claiming that "he had possessions" in Bellas's home.

After investigating, the police asked Bellas if she wanted to press charges against Gaughan. Bellas declined, but was advised to call police again if she changed her mind or if she woke with "marks or pain" on her body. Incidentally, Bellas woke up the next morning "in excruciating pain, back pain, and … bruises all down [her] legs." Later that day, she contacted police. Bellas has since received medication and physical therapy for the injuries she sustained to her back. She testified that she still feels threatened by Gaughan and that she has scheduled an appointment for counseling because she has "trouble sleeping" and she "wake[s] up from nightmares" about him. She further testified that the Lackawanna County District Attorney's office has since recommended the filing of charges against Gaughan.

Trial Court Opinion, 12/31/2015, at 1-3 (citations to notes of testimony omitted).

On September 2, 2015, Bellas filed *pro se* a PFA petition. In that petition, she summarized the incident outlined above. She also detailed an incident that occurred on August 4, 2015 where she claimed that Gaughan called and texted her 35 times, then stood outside of her home for two hours while screaming her name and throwing rocks at her window. The trial court entered a temporary PFA order on behalf of Bellas against Gaughan.

On September 16, 2015, a final PFA hearing was held. Both parties appeared and were represented by counsel. At the end of the hearing, the

trial court issued a final PFA order, prohibiting Gaughan from having any contact with Bellas for a period of three years.

Gaughan timely filed a notice of appeal. The trial court did not order Gaughan to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, but did author an 1925(a) opinion.

On appeal, Gaughan sets forth four issues for our review.

> 1.     Did the trial court err in misinterpreting the applicable statute as punishment for past conduct and issuing a final PFA [order] where the record is devoid of any evidence of any risk of future domestic [violence] and in fact confirmed that the claimed incident was an isolated event?
>
> 2.     Did the trial court abuse its discretion in allowing [Bellas] to testify that [Gaughan] was intoxicated when no foundation was laid as to her claimed ability to gauge his intoxication?
>
> 3.     Was the final PFA [order] properly issued where the record confirms that the trial court had predetermined the matter and that is exhibited [as] a bias against [Gaughan]?
>
> 4.     Even assuming for argument's sake that the issuance of the fatally defective final PFA [order] can properly be deemed appropriate, did the trial court err in directing a three-year duration given the lack of evidence of any potential future abuse and the two-month length of the parties' relationship?

Gaughan's Brief at 6 (answers and suggested answers omitted).

"Our standard of review for PFA orders is well settled. 'In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion.'" ***Boykai v. Young***, 83 A.3d 1043, 1045 (Pa. Super. 2014) (quoting ***Stamus v. Dutcavich***, 938 A.2d 1098, 1100 (Pa. Super. 2007) (citations omitted)). "In the context of a PFA case, the court's

objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury…." ***Raker v. Raker***, 847 A.2d 720, 725 (Pa. Super. 2004). The intent of the alleged abuser is of no moment." ***Buchhalter v. Buchhalter***, 959 A.2d 1260, 1263 (Pa. Super. 2008).

Gaughan first argues that the trial court erred in granting a final PFA order in this case because "the record is devoid of any evidence whatsoever that there is any ongoing abuse or risk of any potential future abuse." Gaughan's Brief at 19. Gaughan argues that even if we agree "that a prior incident of abuse did in fact take place, the record confirms that there is no ongoing abuse and no risk of future abuse." ***Id***. at 19-20. Thus, Gaughan suggests that the PFA order here is "a punishment for past transgressions, which is prohibited." ***Id***. at 20.

However, as the trial court aptly noted, "if we did or didn't enter a PFA order based on … the defendant's telling us it's never going to happen again, we wouldn't enter any. But that's not the standard." N.T., 9/16/2015, at 46. Moreover, the trial court concluded that

> Gaughan's behavior over the course of his two-month relationship with Bellas, namely his continual verbal abuse of Bellas both in and out of her home, his repeated instances of driving to her house and fighting, and his admitted refusals to leave the house, amounted to "abuse" within the meaning of the PFA Act under 23 Pa.C.S.[] § 6102(a)(5)[("Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury.")].

Trial Court Opinion, 12/31/2015, at 9.

The trial court's conclusion, that Bellas was the victim of abuse, is supported by the record. Furthermore, Bellas testified that at the time of the hearing, she still felt as if she was under a threat from Gaughan. N.T., 9/16/2015, at 30. "Credibility of the witnesses and the weight accorded their testimony is within the exclusive province of the judge as fact finder." **Mescanti v. Mescanti**, 956 A.2d 1017, 1019-20 (Pa. Super. 2008). Accordingly, the trial court's issuance of a PFA order was appropriate and Gaughan is not entitled to relief on this issue.

Gaughan next contends that the trial court erred by permitting Bellas to testify that Gaughan came to her house "intoxicated." Gaughan's Brief at 21. He goes onto argue that by permitting this testimony, he was prejudiced and is entitled to a new hearing. **Id**.

Bellas testified, in relevant part, as follows.

> A. Approximately five o'clock [Gaughan] arrived at my home intoxicated.

> ***

> Q. And what happened then when he arrived intoxicated?

> A. He arrived at my home intoxicated --

> [Counsel for Gaughan]: Judge, let me just note an objection as to her characterization of intoxication. I don't believe she's an expert --

> The Court: Oh, we all know what drunk is. Overruled.

N.T., 9/16/2015, at 4.

- 6 -

"Questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and may be reversed on appeal only when a clear abuse of discretion was present." **Raker v. Raker**, 847 A.2d 720, 726 (Pa. Super. 2004). "In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party." **Geise v. Nationwide Life & Annuity Co. of Am.**, 939 A.2d 409, 417 (Pa. Super. 2007). Instantly, the trial court granted a PFA order on behalf of Bellas due to Gaughan's behavior over the two-month period leading up to the filing of the petition. A passing reference to alleged intoxication hardly constitutes the type of prejudicial statement to a judge that would require reversal of the order or a new hearing. Accordingly, Gaughan is not entitled to relief on this basis.

Next, Gaughan contends that he is entitled to a new hearing because "the trial court predetermined that abuse had occurred prior to hearing the evidence and the court was biased against Gaughan." Gaughan's Brief at 23. Gaughan goes on to argue that based on the way the trial court overruled certain objections and characterized certain testimony, "there was an appearance of impropriety in this case." *Id*. at 24.

First, Gaughan did not raise this issue before the trial court. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Additionally, "[a] party may not raise the issue of judicial prejudice or bias for the first time in post trial proceedings."

- 7 -

*Ware v. U.S. Fid. & Guar. Co.*, 577 A.2d 902, 905 (Pa. Super. 1990). Accordingly, we conclude that Gaughan has waived this issue on appeal.

Furthermore, even if he had not waived this issue, he would not be entitled to relief on this basis. It is well settled that "a mere recitation of unfavorable rulings against an attorney does not satisfy the burden of proving judicial bias, prejudice or unfairness." *Id*. Thus, the issues which Gaughan has raised do not provide a scintilla of evidence that the trial court was biased against him.

Finally, Gaughan argues that the trial court erred by entering the PFA order for a period of three years in this case because "there is no evidence in the record that there is any ongoing abuse or any threat of any potential future abuse, much less that this non-existent threat will be present for three years." Gaughan's Brief at 24.

"A protection order … shall be for a fixed period of time not to exceed three years." 23 Pa.C.S. § 6108(b). "The court is empowered to grant broad relief to bring about a cessation of abuse." *Heard v. Heard*, 614 A.2d 255, 259 (Pa. Super. 1992).

While we agree that three years, the maximum allowable time period under the statute, is lengthy, the trial court had broad discretion to make that determination. The trial court listened to the testimony presented by both Bellas and Gaughan and determined that three years was an appropriate timeframe. We will not disturb that conclusion.

Having concluded that Gaughan has presented no issue entitling him to relief on appeal, we affirm the trial court's order.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/2016