J-A15008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ANGELIQUE LARSEN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRITT CUNNINGHAM | : | No. 70 MDA 2024 |
| | | |
| Appellee | | |

Appeal from the Order Entered November 16, 2023
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s):  2023-41421

BEFORE:   DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED: SEPTEMBER 19, 2024**

Appellant, Angelique Larsen ("Ms. Larsen"), appeals from the November 16, 2023 order denying her Petition for a Protection from Abuse Order ("PFA Petition") that she filed against Appellee, Britt Cunningham ("Ms. Cunningham") her former girlfriend, pursuant to the Protection From Abuse ("PFA") Act, 23 Pa.C.S. §§ 6101-22.  Upon careful review, we affirm.

The relevant factual and procedural history is as follows.  While Ms. Larsen and Ms. Cunningham were students at the University of Scranton, they were involved in a romantic relationship.  After the relationship ended, Ms. Larsen filed a PFA Petition against Ms. Cunningham alleging that Ms. Cunningham engaged in conduct that met the statutory definition of "abuse"

_____

[*] Former Justice specially assigned to the Superior Court.

during their relationship. In particular, Ms. Larsen alleged that Ms. Cunningham engaged in the following conduct:

- Ms. Cunningham grabbed her wrist "viciously" to stop her from touching Ms. Cunningham, which left a mark;

- Ms. Cunningham "strangled" her "on several occasions" including during sexual activity and once in the car; and

- Ms. Cunningham was "stalking" her.

PFA Petition, 10/27/23, at 5.[1]

On October 30, 2023, the trial court granted Ms. Larsen a temporary PFA order against Ms. Cunningham. The trial court, however, after holding a hearing on Ms. Larsen's allegations, found that based on the evidence that the trial court found credible and persuasive, Ms. Larsen failed to present sufficient evidence to establish that Ms. Cunningham's conduct fell within the level of "abuse" defined at 23 Pa.C.S. § 6102. The trial court denied the PFA Petition, and Ms. Larsen appealed. Both Ms. Larsen and the trial court complied with Pa.R.A.P. 1925.

Ms. Larsen raises the following issues for our review:

1. Did the court make an error of law when it held that [Ms. Larsen] did not meet the burden of the preponderance of evidence that abuse occurred, as defined under the [PFA] Act in § 6102(a)(1)?

---

[1] After the relationship ended, Ms. Cunningham sought, and the University granted, reciprocal no-contact orders. Ms. Larsen, however, violated the no-contact order. Ms. Larsen also filed a Title IX complaint against Ms. Cunningham alleging that Ms. Cunningham abused her. Ms. Larsen, however, later withdrew the complaint.

2. Did the court make an error of law when it found [Ms. Larsen's] testimony credible, which included testimony that [Ms. Cunningham] touched [Ms. Larsen] in a sexual way without her consent, but did not cite credible testimony that was contradictory and instead stated on the record that no "statutory sexual assault" occurred?

3. Did the court make an error of law when it denied [Ms. Larsen's PFA Petition] despite finding [Ms. Larsen's] testimony, specifically, that she was physically harmed by [Ms. Cunningham], credible?

4. Did the court make an error of law when it denied [Ms. Larsen's PFA Petition] based on a finding that no bodily injury had occurred, as the definition of "abuse" does not require infliction of actual physical injury?

5. Did the court make an error of law when it denied [Ms. Larsen's PFA Petition] based on a finding that no bodily injury had occurred, because a [petitioner] is not required to wait for physical or sexual abuse to have occurred for the PFA Act to apply?

6. Did the court abuse its discretion when it gave too much weight to the evidence that on one single occasion [Ms. Larsen] approached [Ms. Cunningham], and therefore, the totality of evidence is insufficient to establish that [Ms. Larsen] is in reasonable fear of bodily injury?

Ms. Larsen's Br. at 7-9.[2, 3]

---

[2] Ms. Larsen raised a seventh issue in her Statement of Questions Involved— "[d]id the court abuse its discretion when it held that [Ms. Larsen] did not establish reasonable fear, as [Ms. Cunningham's] unusual presence at times and/or locations where only [Ms. Larsen] frequented was the result of strategic stalking behaviors initiated by [Ms. Cunningham]?"—but failed to argue it in her brief. Ms. Larsen's Br. at 9. Accordingly, Ms. Larsen has waived this claim. *See Commonwealth v. Jones*, 815 A.2d 598, 604 n.3 (Pa. 2002) (finding claims waived when raised in Statement of Questions Involved but not pursued in body of brief).

[3] Ms. Larsen addresses these six issues in four sections in her brief; we will, therefore, address our response in four sections.

**A.**

In a PFA action, we review the PFA court's legal conclusions for an error of law or abuse of discretion. ***See Custer v. Cochran***, 933 A.2d 1050, 1053-54 (Pa. Super. 2007) (*en banc*). "A trial court does not abuse its discretion for a mere error of judgment; rather, an abuse of discretion occurs where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will." ***Kaur v. Singh***, 259 A.3d 505, 509 (Pa. Super. 2021) (citation and internal quotation marks omitted).

We review the record in the light most favorable to the party that prevailed before the PFA court and grant all reasonable inferences to her. ***See Snyder v. Snyder***, 629 A.2d 977, 982 (Pa. Super. 1993). Additionally, we defer to the court's credibility determinations. ***See Karch v. Karch***, 885 A.2d 535, 537 (Pa. Super. 2005). "Credibility of witnesses and the weight accorded their testimony" is exclusively for the factfinder. ***Mescanti v. Mescanti***, 956 A.2d 1017, 1019–20 (Pa. Super. 2008). "[T]he fact finder is free to believe all, part, or none of the evidence presented." ***Commonwealth v. Mobley***, 14 A.3d 887, 889-90 (Pa. Super. 2011) (citation omitted). "On appeal, it is not the duty of this court to find facts, but to determine if there is evidence in the record to support the trial court's findings." ***Heard v. Heard***, 614 A.2d 255, 260 (Pa. Super. 1992).

Finally, to obtain a PFA order, the petitioner must prove that "abuse" occurred by a preponderance of the evidence, which this Court has "defined

as the greater weight of the evidence, *i.e.*, to tip a scale slightly[.]" ***Raker v. Raker***, 847 A.2d 720, 724 (Pa. Super. 2004).

\*

In her first claim, Ms. Larsen asserts that the trial court erred when it held that she did not meet her burden to prove that Ms. Cunningham's actions met the statutory definition of "abuse" as provided in Section 6102(a)(1) of the PFA Act. Ms. Larsen's Br. at 8, 14. Specifically, she claims that Ms. Cunningham injured her wrist and choked her without her consent and, thus, attempted to cause and intentionally caused bodily injury. ***Id.*** at 16, 18, 20.

The PFA Act's definition of "abuse" includes "[a]ttempting to cause or intentionally. . . causing bodily injury[.]" 23 Pa.C.S. § 6102(a)(1). In this case, the trial court concluded that Ms. Larsen failed to establish that Ms. Cunningham's conduct rose to the statutory definition of "abuse" for several reasons. Trial Ct. Op., 2/9/24, at 7. First, the trial court concluded that Ms. Larsen did not suffer any bodily injury to her wrist because "there was no mark that the Court was able to see, and there was no physical limitation or need for medical assistance for the alleged injury to Ms. Larsen's wrist." ***Id.*** at 8.

The trial court also concluded that Ms. Cunningham's conduct did not meet the statutory definition of "abuse" because the incident in which Ms. Cunningham grabbed Ms. Larsen's wrist began with Ms. Cunningham asking Ms. Larsen "a number of times to stop touching her ear . . . but [Ms. Larsen] continued to do so." ***Id.*** at 7-8. The trial court observed that when Ms. Larsen

continued to touch Ms. Cunningham's ear, Ms. Cunningham "simply reached up to stop her, as would be anyone's natural inclination." *Id.* at 8. The trial court concluded from these facts that Ms. Cunningham did not "intend[], in any manner to cause injury to [Ms. Larsen.]" *Id.*

The trial court also found that Ms. Cunningham's choking of Ms. Larsen during sexual activity failed to meet the definition of "abuse." *Id.* at 8-9. The trial court, in reaching this conclusion, relied on the following facts: Ms. Larsen "suggested that the parties engage in said choking behavior [during sex], initiated said [choking] behavior on several occasions, and never indicated to [Ms. Cunningham] that she was uncomfortable participating in said behavior." *Id.* at 8. The trial court also did not find Ms. Larsen credible when she claimed that she at times could not breathe or speak when Ms. Cunningham choked her. *Id.* at 8-9. The trial court, therefore, concluded that the evidence did not establish that Ms. Cunningham "attempt[ed] to cause or intentionally, knowingly or recklessly caused bodily injury" to Ms. Larsen. *Id.*

Ms. Larsen, in challenging the trial court's conclusion, merely recites evidence favorable to her claims and argues that Ms. Cunningham's "actions in regard to the initially consensual strangulation are at the very least 'reckless' according to the evidence presented." Ms. Larsen's Br. at 20. Ms. Larsen further argues that the trial court had to accept Ms. Larsen's testimony that she could not breathe during their strangulation conduct because only Ms. Larsen could know that she could not breathe. *Id.* at 21.

Ms. Larsen ignores our standard of review. We must accept the trial court's determination as to the evidence it found most persuasive and the testimony it found credible as long as the record supports the evidence upon which the trial court relied. **See Heard**, 614 A.2d at 260. Ms. Larsen's claim of error is based upon re-weighing the evidence, reversing the trial court's determination of Ms. Larsen's credibility, and making inferences favorable to her. This we cannot and will not do.

Ms. Larsen has failed to identify any facts on which the trial court relied that the record does not reflect, and our review of the record has likewise uncovered none. Thus, we find no error in the trial court's determination that Ms. Larsen failed to meet her burden to establish that Ms. Cunningham's actions rose to the statutory definition of "abuse," let alone that Ms. Cunningham attempted to or recklessly engaged in "abuse."

*

In Ms. Larsen's second claim, she asserts that the court erred when it found her testimony regarding the choking credible but determined that the choking did not rise to level of "abuse." Ms. Larsen's Br. at 8, 21-22. Ms. Larsen concludes that the trial court made a "perplexing credibility determination that it believed both witnesses, but without any further description as to the demeanor, sincerity, or motive, it ruled arbitrarily in favor of [Ms. Cunningham's] version of events." **Id.** at 22.

As discussed above, the trial court found that Ms. Larsen initiated the choking activity at times and thus, the trial court reasonably inferred from

that evidence that when Ms. Cunningham choked Ms. Larsen, she was not attempting to inflict bodily injury.  Trial Ct. Op. at 8-9.  Also, the trial court did not find Ms. Larsen credible when she testified that she could not breathe or speak when Ms. Cunningham choked her.  *Id.*

The trial court did not make a "perplexing credibility determination[,]" as Ms. Larsen claims.  Ms. Larsen's Br. at 22.  The trial court found portions of Ms. Larsen's testimony credible and other portions not credible.  That is the role of the factfinder.  Appellant has cited no legal authority—and none exists—that requires a factfinder to find either all or none of the testimony credible.  In fact, the law is clear that the factfinder may find portions of a witness's testimony credible and other portions not credible. **See Mobley**, 14 A.3d at 889-90 (reiterating that the factfinder may "believe all, part, or none of the evidence") (citation omitted).  Furthermore, our standard of review requires us to accept these credibility determinations.  **See Mescanti**, 956 A.2d at 1019–20.  Thus, this claim fails.

\*

In Ms. Larsen's third claim, she argues that the court erred when it failed to find that the evidence established that Ms. Cunningham placed Ms. Larsen in "reasonable fear of imminent serious bodily injury."  Ms. Larsen's Br. at 22-23.  Specifically, Ms. Larsen first argues that the trial court erred because it concluded that she was not afraid of Ms. Cunningham and failed to rely on Ms. Larsen's testimony that she was "physically shaking at the moment of approaching" Ms. Cunningham.  **Id.** at 24.  As discussed above, this challenge

pertains to the credibility of Ms. Larsen's testimony, and we must defer to the trial court's credibility determinations. **See Mescanti**, 956 A.2d at 1019–20.

Ms. Larsen further argues that the trial court erred because she "is not required to wait for physical or sexual abuse to have occurred for the PFA Act to apply." Ms. Larsen's Br. at 24. The trial court discussed this element and found that Ms. Cunningham did not place Ms. Larsen in "reasonable fear of imminent serious bodily [injury]" because Ms. Larsen "suggested and initiated" the sexual activity which is the basis for the PFA Petition. Trial Ct. Op. at 11-12. Ms. Larsen misconstrues the trial court's analysis by implying that the trial court denied Ms. Larsen's petition because the trial court required that Ms. Cunningham actually physically or sexually abuse Ms. Larsen. This argument ignores the statutory requirements for the trial court to issue a PFA Order. As discussed in greater detail above, the trial court denied the PFA Petition because it found that Ms. Larsen failed to present sufficient evidence to the trial court for the trial court to grant the petition.

\*

In Ms. Larsen's fourth claim, she argues that the "trial court abused its discretion . . . when [it] denied [Ms. Larsen's] petition against the weight of the evidence because it did not consider the 'totality of circumstances'" when considering whether Ms. Cunningham engaged in a course of conduct under Section 6102(a)(5). Ms. Larsen's Br. at 25. Ms. Larsen argues that the trial court "weighted [Ms. Cunningham]'s version of events more heavily, but held that it believed both parties['] testimony." **Id.** at 27. Ms. Larsen further

argues that the trial court abused its discretion because it did not find persuasive Ms. Larsen's testimony "establishing multiple acts of intimidation, coupled with testimony of indecent assault and [Ms. Larsen] stating on the record several times that she is afraid of [Ms. Cunningham.]" *Id.* at 28. Ms. Larsen argues that the trial court should have considered her testimony "in its totality, but the unsurmised or misunderstood actions of [Ms. Larsen] are not for the court to measure against the credibility determination of [Ms. Larsen], especially when those actions precede the filing of the PFA order." *Id.* Ms. Larsen concludes that the trial court erred in not finding that Ms. Cunningham engaged in "abuse as a course of conduct." *Id.* at 29. Section 6102(a)(5) defines abuse as occurring when an individual "[k]nowingly engag[es] in a course of conduct or repeatedly commit[s] acts toward another person . . . under circumstances which place the person in reasonable fear of bodily injury." 23 Pa.C.S. § 6102(a)(5).

Once again, Ms. Larsen asks this Court to re-weigh the evidence and reverse the court's credibility determinations. Our standard of review is to determine whether the record supports the facts upon which the trial court relied to reach its conclusion. *See Heard*, 614 A.2d at 260. Ms. Larsen has failed to identify any fact that is not supported by the record.[4] Further, in

---

[4] Ms. Larsen continually argues throughout this section that the trial court erred in not considering the "totality of the circumstances" because it did not find persuasive other evidence that Ms. Larsen believes is important. Once again, this argument challenges the weight of the evidence. As discussed throughout this memorandum, we cannot and will not re-weigh the evidence. *See Mescanti*, 956 A.2d at 1019–20.

- 10 -

arguing that the court erred in not blindly accepting her testimony, Ms. Larsen ignores the well-settled and oft-repeated standard that this Court may not make its own credibility determinations when it is the trial court who has heard the witnesses' testimony and observed their demeanor.

Ms. Larsen also argues that the trial court should not have considered Ms. Larsen's behavior "prior to the filing of the petition." Ms. Larsen's Br. at 29. Ms. Larsen has failed, however, to provide any legally relevant basis to exclude it. In fact, the entire PFA Petition, as is true for all PFA petitions, is based on events that occur prior to filing of the petition. We, thus, reject this argument.

Finally, Ms. Larsen challenges the trial court's conclusion that she was not in fear of Ms. Cunningham because Ms. Larsen violated a no-contact order that the university issued and withdrew a Title IX complaint that Ms. Larsen filed against Ms. Cunningham. *Id.* Ms. Larsen is merely challenging the weight of the evidence and the court's credibility determinations. As noted above, our standard of review requires that we again reject this argument. *See Mescanti*, 956 A.2d at 1019–20.

**B.**

In sum, we find no abuse of discretion or error of law in the trial court's denial of Ms. Larsen's PFA Petition. Accordingly, we affirm the trial court's denial of Ms. Larsen's PFA Petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 09/19/2024