J-A19015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SIDNEY KINGMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KAYELA TEATES | : | No. 391 WDA 2025 |

Appeal from the Order Entered March 4, 2025
In the Court of Common Pleas of Westmoreland County
Civil Division at No. 12DO00619

BEFORE:  BOWES, J., STABILE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:　　　　　　**FILED: October 15, 2025**

Sidney Kingman (Father) appeals from the trial court's order which denied his petition to modify the parties' shared legal and physical custody of S.T. (Child).  We affirm.

CASE HISTORY

Child was born in February 2012 to Father and Kayela Teates (Mother). Shortly after, Father filed a complaint for shared legal and physical custody. On October 2, 2012, the trial court ordered that the parties share legal custody, and granted Mother primary physical custody of Child, subject to Father's periods of partial custody on Tuesday and Thursday mornings and every other weekend.

In February 2016, Father filed a petition to modify custody in which he sought equally shared physical custody.  On April 19, 2016, the trial court

entered an order providing for the parties' shared physical custody of Child "on a 2-2-3, 2-2-3 schedule." Order, 4/19/16, at 2.

On November 13, 2023, Father filed the underlying petition seeking primary physical custody of Child. Father claimed he was "better able than Mother to provide for stability and continuity in all aspects of [C]hild's life," and had a "loving, stable, consistent, and nurturing relationship with [C]hild that is more than adequate for [C]hild's emotional needs." Petition for Modification of Custody, 11/13/23, at 2. Father also asserted that the "best interests and permanent welfare of [C]hild require that Father be awarded primary physical custody of her." *Id.*

The parties attended a custody conference on December 20, 2023. The custody hearing officer issued a recommendation which the trial court adopted on January 9, 2024. The trial court "maintained the 2016 Order of Court, which awarded the parties shared legal and physical custody of Child on a 2-2-3 rotating schedule." Memorandum and Order (Memorandum), 3/4/25, at 1. In response, Father requested a pre-trial conference and custody trial pursuant to Pa.R.Civ.P. 1915.4-4 and Westmoreland County Rule W1915.4-4.

A custody trial was held on January 24, 2025. The trial court explained:

> During the one-day trial, testimony was provided by the parties themselves and the Child *in camera*, as well as by Kimberly Stenson, a licensed marriage and family therapist, and Amanda Stough, Stepmother to Child. Mother expressed her preference to maintain the status quo for the physical custody arrangement, while Father indicated that he wished to exercise primary physical custody, leaving Mother with having custody on one overnight from Friday to Saturday on alternate weekends.

Memorandum at 1.

On March 4, 2025, the trial court issued its decision in a Memorandum and Order which addressed the statutory custody factors set forth in 23 Pa.C.S. § 5328(a).[1]  *Id.* at 1-5.  Pertinently, the court concluded:

> In assembling all of these factors and weighing them appropriately, the [c]ourt finds that it would be most appropriate for the parties to share legal custody and physical custody as they have been doing since 2016.  The majority of the custody factors, including the well-reasoned preference of the Child herself, support maintaining the current shared schedule.[2]  The [c]ourt does recognize that Father's household provides for more structure and stricter rules, but this does not outweigh the evidence that favors continuing with a shared physical custody schedule.

*Id.* at 5.  The court ordered that the parties "continue to share physical custody of the Child in accordance with the Order of Court dated January 9, 2024."  *Id.* at 6.  The court also specified that its ruling "shall constitute a final [o]rder."  *Id.*

On March 28, 2025, Father filed a timely notice of appeal and concise statement of errors pursuant to Pa.R.A.P. 1925(a)(2)(i).  The trial court subsequently adopted its Memorandum as its opinion in support of its order.

---

[1] The General Assembly amended Section 5328(a), effective August 29, 2025.  The amendments do not impact our decision.

[2] Child was in seventh grade and "soon-to-be 13 years old."  N.T., 1/24/25, at 32.  She stated that she "wouldn't want to live [primarily] with one parent," and "would want to do 50/50."  *Id.* at 46.

*See* Statement Pursuant to Pa. Rule of Appellate Procedure 1925(a), 4/29/25, at 1. The court explained:

> In reviewing [Father's] Concise Statement of Matters Complained of on Appeal, it appears to this [c]ourt that [Father] alleges insufficient facts exist to support the [court's order]. It is a well-settled principle of law that an appellate court will defer to the trier of fact on issues related to findings of fact, absent any abuse of discretion. *Heard v. Heard*, 614 A.2d 255, 258-59 (Pa. Super. 1992). The test for whether a trial court's decision should be reversed or remanded is whether the conclusions reached are unreasonable as demonstrated by the evidence of record. *See A.H. v. C.M.*, 58 A.3d 823, 825 (Pa. Super. 2012). This [c]ourt submits that the conclusions reached in the Memorandum and Order … are supported by the evidence provided by the parties during the trial on January 24, 2025.

*Id.*

> On appeal, Father presents the following question for our review:

> DID THE [TRIAL] COURT COMMIT ERROR WHEN [IT] FAILED TO SET FORTH [ITS] FACTUAL FINDINGS, THE CONCLUSIONS [IT] DREW FROM THOSE FACTUAL FINDINGS, THE REASONING EMPLOYED IN COMING TO THE CONCLUSIONS…, AND THE BASIS FOR THE DECISION [THE COURT] MADE [REGARDING SIX OF THE] CUSTODY FACTORS?

Father's Brief at 6.

## DISCUSSION

As the trial court observed, the Superior Court reviews custody orders for an abuse of discretion. *See Taylor v. Smith*, 302 A.3d 203, 206 (Pa. Super. 2023). "Importantly, we defer to the trial court on matters of credibility and weight of the evidence, as the trial court viewed and assessed witnesses firsthand." *Id.* at 207 (citing *S.C.B. v. J.S.B.*, 218 A.3d 905, 913

(Pa. Super. 2019)).  "It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [*sic*] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion[.]"  **King v. King**, 889 A.2d 630, 632 (Pa. Super. 2005) (quoting **Hanson v. Hanson**, 878 A.2d 127, 129 (Pa. Super. 2005)).

The paramount concern in custody cases is the best interests of the child.  23 Pa.C.S. § 5328(a); **Saintz v. Rinker**, 902 A.2d 509, 512 (Pa. Super. 2006).  "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being."  **D.K.D. v. A.L.C.**, 141 A.3d 566, 572 (Pa. Super. 2016) (citations omitted).  "Common sense dictates that trial courts should strive, all other things being equal, to assure that a child maintains a healthy relationship with both of his or her parents, and that the parents work together to raise their child."  **S.C.B.**, 218 A.3d at 916.

In ordering any form of custody, a trial court must consider the relevant factors set forth in the Child Custody Act.  23 Pa.C.S. § 5328(a).  The court must "delineate the reasons for its decision when making an award of custody either on the record or in a written opinion."  **Taylor**, 302 A.3d at 208 (citations omitted).  There "is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations."  **Id.**

Here, Father states that he "does not understand how the [trial c]ourt came to the decision to deny his request for a change in custody." Father's Brief at 9.[3] Father argues that the trial court "failed to adequately set forth its assessment" of six statutory custody factors. *Id.* at 10. He challenges the court's findings regarding:

> (1) Which party is more likely to ensure the safety of the child.
>
> …
>
> (2.3) The level of cooperation and conflict between the parties, including:
>
>> (i) which party is more likely to encourage and permit frequent and continuing contact between the child and the other party or parties if contact is consistent with the safety needs of the child; and
>
> …
>
> (4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.
>
> …
>
> (10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.
>
> …
>
> (12) Each party's employment schedule and availability to care for the child or ability to make appropriate child-care arrangements.
>
> (13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

---

[3] Mother is *pro se* and has not filed an appellate brief.

*Id.* at 10-22 (citing 23 Pa.C.S. § 5328(a)).[4]

Father references the above factors in arguing that the trial court improperly weighed the evidence, and recites testimony which he views as favorable to his request for primary physical custody. *See* Father's Brief at 25-39. For example, Father emphasizes that he and Stepmother are self-employed, and more available to care for Child than Mother. *Id.* at 26. Father claims that Mother does not ensure Child's safety because she leaves Child in the care of her adult children when she has to work early in the morning. *Id.* at 33-34 (stating that "Mother's own testimony confirmed that she leaves her house at 3:15 AM to go to work at [a convenience store,] which leaves [C]hild at home with her two [adult] brothers"). According to Father, the brothers are inadequate caretakers, and the situation "is no different than leaving [Child] home alone and hoping for the best." *Id.* at 34.

Father further focuses on his challenges with helping Child with schoolwork, and Mother not having "the same expectations" or making an

---

[4] Although factors (10) and (13) were deleted by the August 29, 2025 amendments, their substance appears in current factors (3) ("whether the party is willing and able to … attend to the daily physical, emotional, developmental, educational and special needs of the child"), and (2.3) ("the level of cooperation and conflict between the parties, including: (i) which party is more likely to encourage and permit frequent and continuing contact between the child and the other party or parties if contact is consistent with the safety needs of the child"). A court must still consider any "other relevant factor," and the statute continues to state, "No single factor under subsection (a) shall by itself be determinative in the awarding of custody. The court shall examine the totality of the circumstances, giving weighted consideration to the factors that affect the safety of the child, when issuing a custody order that is in the best interest of the child." 23 Pa.C.S. § 5328(a)(16), (a.2).

effort to assist Child academically.[5]  *Id.* at 27-34.  Father assails Mother's testimony that she is "trying to get better with it."  *Id.* at 35 (citing N.T. at 160).  He asserts that Mother "should not still be <u>trying</u> to be a good mom," and if she "ha[s] not already attained that status[,] she never will and it is time to address that reality."  *Id.* (emphasis in original).  Father's argument is not convincing.

The trial court recognized that Father and Stepmother are self-employed, that their household is more structured, and that Father was concerned with "the school issue."  *See* N.T. at 160.  Thus, the court found that these facts pertaining to the performance of parental duties favored Father.  However, it found that the other custody factors were neutral.  The court explained:

> Other than Father's testimony regarding Mother's work schedule and his concern about a lack of supervision for Child, no testimony was presented to indicate that either parent feels that Child is not safe in the other parent's care.  Mother assured the [c]ourt that the Child is not left unsupervised, even during her working hours.
>
> …  The parties currently share physical custody, but Father has requested to limit Mother's contact to one weekend every other month….  No evidence was submitted to demonstrate a safety concern that would justify limiting continued contact between Child and either parent.
>
> …  With the parties' residences being close to one another, the families share a lot of community ties.  Awarding one parent additional custody time or naming a primary physical custodian will do little to change the stability in Child's life.

---

[5] Child stated that her grades consisted of "one C" and "the rest are Bs and As."  N.T. at 35.

[Regarding] the ability of each parent to attend to the daily physical, emotional, developmental, educational, and special needs of [C]hild[,] Father and Stepmother testif[ied] to binge eating by Child, which they believe points to a mental health issue for Child. This [c]ourt does not find that any diagnosis has been made for Child and therefore will not classify Child as requiring any type of special care. Thus, both parents are able to attend to Child's daily needs, and this factor is deemed to be neutral to the analysis.

… Father points to Mother's erratic work schedule as an issue that leaves Child unsupervised for periods of time. Mother relies upon her adult children residing in the home to provide this care. For Father's part, Stepmo[ther] is able to provide care for Child while he is at work.

… The custody factor related to the level of conflict between the parties and the willingness and ability of the parties to co-parent with one another is one that deserves special consideration. The parties had been referred to co-parenting, but Mother only participated in one session before reporting that she did not feel comfortable with how Father behaved during the sessions. Father continued to attend scheduled sessions in Mother's absence, but it is clear that the parties do not have a strong co-parenting relationship as [of] yet.

Memorandum at 2-4 (condensed for clarity).

Ultimately, the trial court determined that the evidence supported continuation of the parties' shared physical custody. The record supports the determination. While Father maintains that the evidence warrants modification of the existing custody order, neither Father nor this Court may make factual findings, weigh evidence, or assess credibility. We have explained:

> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration

of the best interest of the child was careful and thorough,
and we are unable to find any abuse of discretion.

***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa. Super. 2014) (citation omitted).

Upon review, we conclude that the trial court did not abuse its discretion in denying Father's petition to modify custody.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

10/15/2025